Argued and submitted December 30, 1982, reversed and remanded February 1, 1983

# DOUGLAS SHUMWAY,
*Petitioner on review,*

*v.*

# OREGON STATE PENITENTIARY,
*Respondent on review.*

(CA A23436, SC 28864)

657 P2d 686

Paul J. DeMuniz, Salem, argued and submitted brief for petitioner. With him on the brief was Garrett, Seideman, Hermann, Robertson & DeMuniz, P.C.

Scott McAlister, Assistant Attorney General, Salem, argued and submitted brief for respondent. With him on the brief were William F. Gary, Solicitor General, and Dave Frohnmayer, Attorney General, Salem.

Gary D. Babcock, Public Defender, Salem, filed brief for petitioner in the Court of Appeals.

Before Lent, Chief Justice, and Linde,* * Peterson, Campbell, Roberts, Carson, Justices, and Jones, Justice Pro Tem.

PETERSON, J.

Campbell, J., concurring opinion.

Jones, J., concurring opinion, which Carson, J., joins.

---

* * Linde, J., did not participate in this decision.

## PETERSON, J.

Petitioner, an inmate of the Oregon State Penitentiary, appealed a disciplinary order on two grounds, failure of the disciplinary committee to conduct an investigation, and violation of an administrative rule which requires the submission of information upon which the hearings officer can determine the reliability of an unidentified informant on whose uncorroborated report the order rests. The Court of Appeals affirmed without opinion, and we allowed review to examine the application of the rule. We reverse the Court of Appeals and remand the case to the agency.

■ ■ The administrative rule in question is addressed to the situation when a witness to a prison disciplinary violation is another prisoner who cannot safely testify or even be identified at a disciplinary hearing. The rule was designed to approximate normal adjudicatory due process as closely as consistent with this special risk of the prison setting, in response to the United States District Court's decision in *Bartholomew v. Reed,* 477 F Supp 223, 227-28 (D Or 1979) *modified on other grounds sub nom Bartholomew v. Watson,* 665 F2d 915 (9th Cir 1982). The rule therefore requires the hearings officer to decide the reliability of an unidentified informant. OAR 291-105-041(5) provides:

"(5) The evidence considered by the Hearings Officer will be of such credibility as would be considered by reasonable persons in the conduct of their affairs;

"(a) When unidentified informant testimony is presented to the Hearings Officer, the identity of the informant or the verbatim statement of the informant, or both shall be revealed to the Hearings Officer.

"(b) Information must be submitted to the Hearings Officer upon which the Hearings Officer can find that the informant is reliable in the case at issue."

Subsection (5) states two separate requirements, both of which must be met. Even when the identity of the informant or the informant's verbatim statement is revealed to the hearings officer, as required by paragraph (a), paragraph (b) requires that information also must be submitted to the hearings officer from which that officer can find that the informant is reliable in the case at issue. The finding of reliability must be made by the hearings officer, not by the

charging officer; it must relate to the "case at issue"; and it must have a sufficient evidentiary basis in the information submitted to the hearings officer.

In this case, the "verbatim statement of the informant" was quoted in the misconduct report submitted to the hearings officer. The informant was not identified. The disputed issue concerns compliance with paragraph (b) of the rule, the adequacy of the information on which the hearings officer could determine the reliability of the informant.

The total information submitted in the misconduct report read as follows:

"On 12-5-81 at about 12:15 pm an informant who has previously proven to be reliable told me 'I saw Shumway spit on (William) Jackson and heard him threaten to firebomb Jackson.' * * *.

"I can not reveal the identity of the informant as this would place him in serious danger of retaliation from other inmates."

Shumway was charged with violation of prison rules against assault, attempted assault, and disrespect to another. The hearings officer and the Disciplinary Committee recommended dismissal of the first two charges and a sanction of 13 days in segregation on the last charge. The prison superintendent increased the punishment to three months in segregation.

■     The record shows no information on which the hearings officer could decide the reliability of the unnamed informant other than the inclusion of the subordinate clause "who has previously proven to be reliable" in the sentence quoted above from the misconduct report. That brief clause in the report is not a sufficient basis for an independent finding by the hearings officer. The hearings officer made no further inquiry into the informant's past or present reliability. She had no reason to know how the informant had been found reliable in the past, by whom, concerning what subject matter, or by what verification of the truth of his prior statements. Nor was there in this case any corroboration of the informant's statement by other consistent evidence, as occurred, for instance, in *Hartman v. OSP,* 50 Or App 419, 623 P2d 681 (1981).

The mere inclusion of the quoted clause in the charging officer's report is not a sufficient basis for an independent finding by the hearings officer. If it were, this obviously would reduce the requirement to mere routine in drafting misconduct reports. In effect, such a practice delegates the determination of an informant's reliability to the charging officer. That is contrary to the rule, which requires the finding to be made independently by a quasi-judicial hearings officer.

This court has stated that "a showing that the prison officer knows that the information of the informant has proved reliable in the past is some evidence from which the hearings officer can find reliability." *Grisel v. OSP,* 290 Or 719, 722, 625 P2d 651, *cert den* 454 US 846, 102 S Ct 164, 70 L Ed 2d 134 (1981). The court said that such a "showing" is "some evidence." It did not say that a mere assertion in the misconduct report was sufficient. The hearings officer must have something upon which to decide. Also in *Grisel* the informant's reported statement may have been corroborated by the character of the victim's wounds. Here, no showing concerning the informant's past reliability and no corroborative facts appear in the record to support the hearings officer's finding as to the informant's reliability in the case at issue.[1] We hold that some

---

[1] The hearings officer's finding refers to the informant as an "eyewitness," but the assumption that he was an eyewitness rests only upon the statement of the very informant whose reliability is at issue. The finding mixes the question whether the informant deserves to be believed with the question whether, if believed, he was in a position to give reliable information.

The concurring opinion refers to the confusion which arises from the use of the terms "evidence * * * of such credibility" and "informant is reliable" which appear in OAR 291-105-041(5). We note that the rule which preceded OAR 291-105-041(5) and which was involved in *Bartholomew v. Reed,* 477 F Supp 223 (D Or 1979), *modified on other grounds sub nom Bartholomew v. Watson,* 665 F2d 915 (9th Cir 1982), required that the record "contain information from which the disciplinary committee can reasonably conclude that the informant was *credible* and his statement *reliable.*" (Emphasis added.) 477 F Supp at 227-28. The court held that "[i]t is especially important that the factfinders be presented with complete information on which to base their assessment of the informant's testimony. In order to properly consider the weight to be given to the testimony of informants, normally their identity or the exact nature of the information they have furnished, or both, ought to be revealed to the disciplinary committee. * * *" 477 F Supp at 228. A federal Court of Appeals has held that due process requires that an unidentified informant's reliability be established by specific, non-conclusory facts presented to the prison disciplinary tribunal. *Helms v. Hewitt,* 655 F2d 487, 502 (3d Cir 1981), *cert granted* 455 US 999, 102 S Ct 1629, 71 L Ed 2d 865 (1982).

evidence must be presented other than the statement in the report that "the informant has previously proven to be reliable" in order for the hearings officer to "find that the informant is reliable in the case at issue." This issue was not argued by the parties in *Grisel*. To the extent that *Grisel*, on its facts, is inconsistent, its holding is disapproved.

Defendant also contends that the Disciplinary Committee failed to follow another rule which requires it to conduct an investigation upon an inmate's request.[2] Respondent argues that defendant did not clearly make such a request. Whether what defendant said at the hearing should have been understood as a request for an investigation could be a matter of reasonable disagreement, in the light of the uneven articulateness of prisoners not represented by counsel. Since the first ground discussed above requires a remand to the Disciplinary Committee in any event, we need not decide the issue of the request for an investigation, which can be renewed before the committee.

The decision of the Court of Appeals is reversed. Remanded to the agency.

**CAMPBELL, J.,** concurring.

I concur with the result reached by the majority, but find it unnecessary to "disapprove" or "overrule" *Grisel*

---

OAR 291-105-041(5) has two parts, parts (5)(a) and (5)(b). Although compliance with (5)(a) might in some case also satisfy the requirements of (5)(b), the mere statement that the informant "has previously proven to be reliable" is, by itself, insufficient to satisfy (5)(b).

[2] OAR 291-105-058:

"In formal hearings, the inmate has a right to request that an investigation be conducted. A designee of the Hearings Officer shall conduct the investigation.

"(1) An investigation shall be conducted upon the inmate's request if an investigation will assist in the resolution of the disciplinary proceedings and the information sought is within the ability of the facility to procure.

"(2) The Disciplinary Adjudicator or Hearings Officer may order an investigation on their own motion.

"(3) The Disciplinary Adjudicator or Hearings Officer shall allow the inmate access to the results of the investigation unless disclosure of the investigative results would constitute a threat to the safety and security of the Corrections Division facility. The reason(s) for nondisclosure shall be made a part of the record."

*v. OSP,* 290 Or 719, 625 P2d 651, *cert den* 454 US 846, 102 S Ct 164, 70 LEd 2d 134 (1981).[1]

In *Grisel v. OSP, supra,* this court at 721 said:

"Petitioner's *sole complaint* is that the statement 'I saw Grisel stab Smith' is a 'conclusory statement' in that it does not state how or where the stabbing took place and therefore cannot be compared to the other evidence in the case. * * *

"* * * The statement is *not conclusory; it is a statement of directly observed fact.* * * * Therefore, petitioner's contention fails." (Emphasis supplied).

The balance of *Grisel* opinion referred to by the majority opinion and Justice Jones' concurring opinion is dictum.

Furthermore, *Grisel v. OSP* can be distinguished from this case on the facts. In *Grisel,* the victim had received a stab wound which corroborated the statement of the informant. In this case there is no physical evidence to bolster the informant's statement.

**JONES, J.,** concurring.

Oregon Administrative Rule 291-105-041(5) is a Corrections Division administrative rule which is sorely in need of clarification. Serious drafting defects have resulted in a rule that causes uncertainty and unpredictable results in the rule's administration. This case should convey the message that this rule needs re-examination.

Since the United States Supreme Court decided *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), the terms "reliable" and "credible" have achieved a degree of special meaning in the law when evaluating informant information.[1] These cases

---

[1] *Grisel v. OSP,* 290 Or 719, 625 P2d 651, *cert den* 454 US 846, 102 S Ct 164, 70 LEd 2d 134 (1981), was a 4-3 decision. The writer is the sole survivor of the four judge majority. Chief Justice Denecke and Justices Tongue and Tanzer have gone their separate ways leaving this humble public servant with a lonesome finger in the dike.

[1] Professor LaFave provides an extensive review of this entire subject in his article *Probable Cause From Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication,* 1977 Ill Law Forum 1 (1977).

use the term "credible" to describe an informant who tells the truth, and the term "reliable" to describe the factual basis for information or evidence provided by the informant. While I am not suggesting that the two-pronged constitutional test which has evolved from these two search warrant cases should be applied to prison disciplinary hearings, I note that the drafters of OAR 291-105-041(5) have performed a seeming aberration in the use of the terms "reliable" and "credible." The drafters have reversed the usage found in 18 years of judicial decisions that have shaped and honed the meaning of these terms in a related area of the law. This administrative rule is an example of how substantial confusion can result from the careless use of these two terms — for what Justice Frankfurter in dissent referred to as the "use [of] language not with fastidious precision," *United States v. Rabinowitz,* 339 US 56, 72, 70 S Ct 430, 94 L Ed 653 (1950).[2]

This imprecisely drafted administrative rule apparently attempts to adopt the "veracity" prong of *Aguilar.* As stated in *Aguilar,* the officer must give the magistrate "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed * * * was 'credible' or his information 'reliable.' * * *." 378 US at 114.

As can be readily seen, this administrative rule has reversed the terminology, requiring the hearings officer to

---

[2] *See, Dawson v. State,* 14 Md App 18, 35, 284 A2d 861, 870 (1971) (Moylan, J., concurring). Judge Moylan, long recognized as an expert on search and seizure, explains the distinction between (1) an informant being credible and (2) his information being reliable:

"The intrinsic approach to veracity is an alternative one in that *Aguilar* commands that the magistrate 'be informed of some of the underlying circumstances from which the officer concluded that the informant' was 'credible' OR 'his information reliable.' * * * Arguably, supporting facts which show that an informant's information is 'reliable' thereby show also that the informant is, on that occasion at least, 'credible.' Unless the alternative phraseology is meaningless, the informant's 'credibility' would seem to involve his inherent and ongoing character as a person—his reputation and demonstrated history of honesty and integrity. Informational 'reliability,' as something separate from its source's credibility, would seem to involve some circumstances assuring trustworthiness on the particular occasion of its being furnished. Although hypothetical examples are difficult to conjure up in the context of police informers, it would certainly follow that any circumstance qualifying as a trustworthy exception to the hearsay rule in a trial setting would, *a fortiori,* qualify in a probable cause setting. * * *" (Footnote omitted.)

find the informant "reliable" and the information or evidence "credible."[3] This inconsistency with past judicial definitions creates substantial confusion in applying the rule. Witnesses are "credible," not information or evidence. Determining the informer's veracity tests his "credibility."[4] The "reliable" standard tests what the informant based his conclusions upon and how the informant acquired the information. I find that "reliable" in the prison disciplinary setting should mean the "trustworthiness" of the information.[5] Even if the hearings officer were to find that the informant had the credibility of the clergy, the hearings

---

[3] The current rule revises a rule previously promulgated in 1973, 1976 and 1979. The original rule, adopted in 1973, used the terms "credible" and "reliable" as they are applied in *Aguilar* and *Spinelli*. *See* former Rule IV(6), quoted in *Bekins v. OSP*, 19 Or App 11, 22, 526 P2d 629 (1974).

The 1976 revision expanded the rule but retained the language relating to "reliable" and "credible." *See* OAR 291-40-115(5)(e) (1976).

The 1979 amendment to the rule was the forerunner of the present confusion when the separate requirements of reliability and credibility were combined into a single test requiring a showing only "that the informant statement is reliable." *See* OAR 291-40-115(5)(e)(2) (March, 1979).

Following *Bartholomew v. Reed*, 477 F Supp 223, 227-28 (D Or 1976), *modified on other grounds sub nom Bartholomew v. Watson*, 665 F2d 915 (9th Cir 1982), the current rule was promulgated, reversing the terms "reliable" and "credible" from their original 1973 context.

[4] The hearings officer must form an independent determination based on his informed judgment. In order to be informed, the hearings officer must be provided some information about the informant's past performance. For example:

1. As a result of previous information was evidence discovered which the informant indicated would be found?

2. Was previous information sufficient to initiate prior disciplinary action, or was it only of minor value?

3. What was the result of prior disciplinary hearings?

4. What factors previously made the informant credible?

5. Has the informant always furnished good information? If the informant has furnished bad information in the past, why should this not derogate his credibility?

We are not suggesting that an exhaustive list is appropriate. There are no ritualistic incantations which can satisfy each hearing.

[5] *Aguilar* and *Spinelli* loosely use the word "reliable" in two different senses. *Aguilar* suggested that an inquiry be made into the reliability of the information to determine its trustworthiness. *Spinelli* speaks of "reliability" as a test of the method by which the informant acquired the information—eyewitness, hearsay, etc. *See* Note, *Probable Cause and The First-Time Informer*, 43 U Colo L Rev 357 (1972).

officer must still probe the reliability of the informant's conclusions: Upon what facts did the informant draw his conclusions? How were these facts obtained? What was seen or heard firsthand? Is there hearsay on hearsay involved?[6]

In *Grisel v. OSP,* 290 Or 719, 721, 625 P2d 651, *cert den* 454 US 846 (1981), a 4-3 court decided in effect that the credibility of the informant could be established by the bare assertion "I received information from an informant * * * whose information has proven reliable in the past * * *." I agree that it is necessary to overrule *Grisel,* recognizing that such a mere conclusion is insufficient even in a prison disciplinary hearing.[7] I find further support for overruling *Grisel* because of the incongruent use of the terms "reliable" and "credible" in the administrative rule. The misuse of these two terms prevents this rule from achieving incorporability with the established definitions of these terms when dealing with informants. I offer no resolution beyond a simple changing of the terms in the rules. I would caution authors of administrative rules to use care when tempted to incorporate or alter terminology which has received prolonged judicial attention. The courts should not be asked to create definitional double standards.

As the majority points out, the record shows no information on which the hearings officer could decide the reliability of the information or the credibility of the unnamed informant other than the subordinate clause "who has previously proven to be reliable" in the sentence quoted

---

[6] The concurring opinion of Justice White in *Spinelli* put the question succinctly, 393 US at 424:

"* * * [D]id the information come from observation, or did the informant in turn receive it from another? Absent additional facts for believing the informant's report, his assertion stands no better than the oath of the officer to the same effect. * * *"

*See also Carpenter v. OSP,* 41 Or App 343, 346, 597 P2d 1253 (1979).

[7] The statement "I saw Grisel stab Smith" was sufficient to establish the reliability of the informant's information or evidence since it was based on firsthand knowledge. The majority opinion in *Grisel* states petitioner's sole complaint was that this statement was insufficient. If so, *Grisel* was properly decided. However, the court considered the issue of the credibility of the informant in stating "a showing that the prison officer knows that the information of the informant has proved reliable in the past is some evidence from which the hearings officer can find reliability." 290 Or at 722.

from the misconduct report. This is a mere conclusory statement whereby only the guard passes on the credibility of the informant. As the majority concluded, that brief clause in the report is not a sufficient basis for an independent finding by the hearings officer as to the credibility of the informant. I criticize this practice for the same reasons we are overruling *Grisel*. The *Grisel* majority held that the hearings officer need make no further inquiry into the informant's past or present "reliability." What the hearings officer really failed to do is to make proper inquiry into the informant's "credibility." She had no independent factual basis for concluding that the informant had provided reliable information in the past which would have consequently tended to establish his credibility.

The present case affords an appropriate vehicle to correct the confusion in the administrative rule. Since the result reached in this case is correct, I concur.

Carson, J., joins in this concurring opinion.