Argued and submitted May 25, affirmed August 8, reconsideration denied September 21, petition for review denied October 9, 1984 (298 Or 68)

WILLIAM NAYLOR,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(09-83-088; CA A30485)

685 P2d 484

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for petitioner.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner, an inmate at the Oregon State Penitentiary, seeks judicial review of a disciplinary order finding him guilty of conspiracy to assault another. He contends that the information submitted to corroborate the statements of the confidential informant, the only person who implicated him in the violation, was insufficient to allow the hearings officer to find that the informant was "reliable in the case at issue," as required by OAR 291-105-041(5)(b).[1] We affirm.

On the morning of September 5, 1983, Officer Slemmons was approached by an inmate, who asked for an interview request form. As he entered a storage closet to retrieve the form, Slemmons was assaulted by the inmate, later identified as Reynolds, with a knife-type weapon. After several minutes of struggling, Slemmons was rescued by inmate Potter. An informant later told the institution security manager and the police that, after the assault, inmate D'Onofrio told him that he, Reynolds and petitioner had conspired to kill Officers Slemmons and Hoover. The reason for doing so was that those officers had supposedly been harassing inmates and that D'Onofrio and Reynolds wanted to be transferred out of the institution. According to the informant, D'Onofrio also said that they had taken the interview request forms out of the bookcase so that Slemmons would have to go into the storage room, where Reynolds would kill him and then kill Hoover; D'Onofrio and petitioner were to keep any other inmates from interfering. The informant said he was present during the assault and saw D'Onofrio and petitioner positioned next to the water fountain when Slemmons was hit. He later heard petitioner tell D'Onofrio that they should have held up their end of the bargain in taking care of the rescuing inmate. The informant also stated that petitioner, D'Onofrio and Reynolds

---

[1] OAR 291-105-041(5) provides:

"(5) The evidence considered by the Hearings Officer will be of such credibility as would be considered by reasonable persons in the conduct of their affairs:

"(a) When unidentified informant testimony is presented to the Hearings Officer, the identity of the informant or the verbatim statement of the informant, or both shall be revealed to the Hearings Officer.

"(b) Information must be submitted to the Hearings Officer upon which the Hearings Officer can find that the informant is reliable in the case at issue."

were friends and always played cards together. The informant's name and verbatim statement were furnished to the hearings officer in a sealed envelope.

D'Onofrio and Reynolds were indicted on charges of attempted murder and conspiracy to commit murder. Petitioner was not indicted, but was found guilty of violating OAR 291-105-015(13), conspiracy to violate subsection (4), assault. The sanction imposed was that he be removed permanently from the Industries Dormitory, not be allowed to hold a job for the remainder of his prison term and that he spend two years in segregation.

In a confidential addendum to her written findings of fact, conclusions of law and recommendations, the hearings officer set forth in detail the reasons why she found that the confidential informant provided reliable and credible information. We have reviewed that addendum, as well as the sealed statement of the confidential informant.

In *Shumway v. OSP,* 294 Or 462, 657 P2d 686 (1983), the court concluded that the mere assertion that an informant had previously proven reliable was not sufficient to establish that the informant was "reliable in the case at issue," as required by OAR 291-105-041(5)(b). It indicated, however, that a showing that the official knows that the informant has proved reliable in the past is some evidence from which the hearings officer may find reliability. It also noted that an informant's statements could be corroborated by other consistent evidence, as occurred in *Hartman v. OSP,* 50 Or App 419, 623 P2d 681 (1981).

Our review of the entire record convinces us that the information provided the hearings officer shows both that the informant had provided reliable information in the past and that his statements were consistent with the assaulted officer's own version of the incident and with the statements of another informant.

Affirmed.