Argued and submitted December 15, 1986, resubmitted In Banc March 12, affirmed
June 10, reconsideration denied September 11, petition for review denied
September 29, 1987 (304 Or 186)

# ELI WIGGETT,
*Petitioner,*

*v.*

# OREGON STATE PENITENTIARY,
Corrections Division,
*Respondent.*

(03-86-175; CA A39956)

738 P2d 580

Steven H. Gorham, Salem, argued the cause and filed the brief for petitioner.

David L. Kramer, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem.

ROSSMAN, J.

Warden, J., dissenting.

## ROSSMAN, J.

Petitioner seeks review of an order of the superintendent of the Oregon State Penitentiary, finding him to be in violation of prison rules for attempting to assault another inmate. He argues that the evidence does not support the superintendent's finding or, in the alternative, that the sentence was unjust in the light of the circumstances.

An unnamed informant advised Captain Barth, Institution Security Manager, that petitioner, his brother Randy[1] and another inmate had attacked inmate Peterson and threatened to do worse if Peterson did not send money to a certain third person. Barth reported the informant's statements "verbatim" in a confidential memorandum of March 10, 1986. In that same confidential memorandum, he gave the informant's name, stated his opinion that the informant was reliable and credible and gave two examples of accurate information that the informant had provided in the past.

The informant took a polygraph examination, and the examiner's opinion was that he was truthful. Barth wrote another confidential memorandum, dated March 14, 1986, explaining the polygraph questions and the examiner's results. In a written statement made on that same date in the course of the examination, the informant stated that an "intermediary" had advised Peterson to send the money to Susan Rayn in Veneta, Oregon.

The prison Disciplinary Committee held a hearing on March 14, 1986, on the charges that petitioner had violated rules against assault and conspiracy. After a short colloquy with the hearings officer, petitioner became upset and left the room. The hearing was reconvened on March 20, 1986, at which time petitioner testified that he had left the yard at the time of the alleged assault and that he did not know who Peterson was. Petitioner testified that his fiancee is Susan Rayn and that she used to live in Veneta. The committee found that petitioner had violated the rule against assault. The superintendent amended the finding to attempted

---

[1] In *Wiggett (Randy) v. OSP,* 85 Or App 646, 738 P2d 586 (1987), petitioner's brother seeks review of a sanction imposed on him for the same alleged incident. The two cases are identical in all essential respects, and our decision in this case therefore determines our decision in that case.

assault, because there was no evidence that Peterson had suffered any specific injuries.

At the relevant time, OAR 291-105-041(5) provided:

"The evidence considered by the Hearings Officer will be of such credibility as would be considered by reasonable persons in the conduct of their affairs.

"(a) When unidentified informant testimony is presented to the Hearings Officer, the identity of the informant and the verbatim statement of the informant shall be revealed to the Hearings Officer.

"(b) Information must be submitted to the Hearings Officer upon which the Hearings Officer can find that the informant is reliable in the case at issue."

The basic evidentiary standard, that the evidence have such "credibility" as would be considered by reasonable persons in the conduct of their affairs, is essentially identical to the standard applicable to other administrative proceedings. ORS 183.450(1).[2] Our scope of review is the same as for a contested case under the Administrative Procedures Act. ORS 183.482(8); ORS 421.195.

This case turns on the credibility of petitioner and the unnamed informant. The hearings officer made no credibility findings concerning petitioner, but made two separate findings that the informant is credible and reliable. The first was based solely on the information contained in Barth's memorandum of March 10, 1986:

"Capt. Barth submitted to the Hearings Officer a memorandum, dated March 10, 1986, in which the inmate informant was identified, as well as the reason he considered the informant to be credible and reliable in the case at issue. Further, this memorandum contained additional information concerning the informant's status as a past and proven informant. The Hearings Officer finds Capt. Barth's informant to be credible and reliable in the case at issue, based on Capt. Barth's information, and the informant's status as an eyewitness to the incident."

---

[2] ORS 183.450(1) refers to the conduct of a person's "serious" affairs; we see no indication that the Corrections Division intended to provide a lower evidentiary standard for disciplinary cases by omitting that word.

The second was based on the polygraph evidence explained in Barth's memorandum of March 14, 1986:

"In a memorandum dated March 18, [*sic*] 1986, Capt. Barth provided information which explained that the informant in the case at issue was administered a polygraph examination by Detective Fox of the Oregon Department of State Police. Detective Fox is a fully certified, trained, and licensed polygraph examiner under the provisions of the Oregon Revised Statutes. The polygraph examination centered around specific statements written by the inmate informant that concerned Inmate Wiggett's involvement in the case at issue. Inmate Wiggett was described, amongst other issues, as having participated in assaulting Inmate Peterson in the Recreation Yard, and that he did hit Inmate Peterson on the left side of the head. It was Detective Fox's conclusion that the informant had been truthful in the written information he provided during the course of the polygraph examination."

Petitioner asserts that the evidence of the polygraph examination and results was not admissible, because it was not "of such credibility as would be considered by reasonable persons." We are not persuaded by his argument. The only authority on which he relies is *State v. Brown,* 297 Or 404, 687 P2d 751 (1984). The concerns which led the Supreme Court in *Brown* to exclude polygraph results in the absence of a stipulation are simply not present here. This disciplinary proceeding is not subject to the Oregon Evidence Code; the Supreme Court held that to be a critical factor. *State v. Brown, supra,* 297 Or at 445. Additionally, the threat of prejudice to the petitioner in the disciplinary setting as a result of undue reliance on the polygraph results is diminished because the hearings officer, presumably familiar with the controversy concerning polygraphs, is not as likely as a jury to be overwhelmed by the results. *See State v. Fink,* 79 Or App 590, 720 P2d 372, *rev den* 302 Or 36 (1986). Moreover, there is here no concern for undue delay which was present in *State v. Brown, supra.*

◼     Conversely, practical concerns of prison disciplinary proceedings suggest the utility of polygraph results in testing the credibility of an informant or of the charged inmate, if he so desires. The hearings officer should have a way, whether perfect of not, of verifying an account provided by an informant, who is often the only witness to a violation, while, at the

same time, protecting his identity. The polygraph accommodates both objectives, even though it may not always be reliable. The exclusion of polygraph evidence would unduly formalize disciplinary proceedings, which are imperfect at best. The referee was justified in relying on it as one, but not the only, basis for deciding that the informant was credible.

We are aware that our holding may appear to be in conflict with *Higley v. Edwards,* 67 Or App 488, 492, 678 P2d 775 (1985), where we held that it is error to admit results of a polygraph examination over the objection of a party in an APA proceeding before an *ad hoc* sheriff's review board concerning the firing of an employe. To the extent that that opinion suggests a result in all cases subject to review as under the APA, it is disapproved. Additionally, we note that, although the issue is not dispositive, this case is distinguishable; defendant did not object to the admission of the polygraph evidence. *Graham v. OSP,* 83 Or App 567, 733 P2d 39 (1987), and *Branton v. OSP,* 83 Or App 571, 732 P2d 926 (1987), are also disapproved to the extent that they suggest, in reliance on *Higley v. Edwards, supra,* that polygraph evidence is inadmissible over the objection of a party in a prison disciplinary proceeding to test the credibility of an unnamed informant.

■ There is other evidence exclusive of the polygraph results which supports the hearings officer's findings that the informant was credible and that his information was reliable. The hearings officer's first finding concerning the credibility of the informant and the reliability of his information was based on the information contained in Barth's confidential memorandum of March 10, 1986. Barth gave the informant's name and stated that the informant's information had been accurate in the past. That information alone would not be sufficient to prove that the informant was credible in this case. *Shumway v. OSP,* 294 Or 462, 463, 657 P2d 686 (1983). However, the memorandum also describes two separate occasions when the informant's information had been accurate; it therefore stated an independent factual basis for finding that the informant had provided reliable information in the past, and was sufficient to support the hearings officer's findings that the informant was credible in this case. *See Shumway v. OSP, supra,* 294 Or at 467. Additionally, petitioner's testimony that his fiancee was Susan Rayn, formerly of Veneta, corroborated the informant's written statement that Peterson was told to

send money to Rayn, which provided the motive for the assault.

The hearings officer indicated that, in his determination of the credibility and reliability of the informant, he was relying in part on the fact that the informant was an eyewitness to the alleged assault. While that fact certainly would not be relevant to the issue of the informant's *credibility, see Shumway v. OSP, supra,* 294 Or at 466 n 1, assuming other evidence shows that the informant is credible, the fact that he was an eyewitness to the alleged assault is certainly relevant to the reliability of the information he has provided, and it is an inquiry which the hearings officer is required to make under OAR 291-105-041(5).

Petitioner's remaining assignment has no merit.

Affirmed.

**WARDEN, J.,** dissenting.

The majority has failed to understand the foundation of the Supreme Court's decisions on polygraph evidence and has thereby seriously undermined evidentiary standards for all administrative hearings. It has also failed to recognize the other flaws in the hearings officer's credibility determination. I therefore dissent.

The question in this case is whether the hearings officer applied the proper standards and considered admissible evidence in deciding that the unnamed informant was credible. That issue is particularly important, because the use of unnamed informant evidence, although permissible in the prison setting, is susceptible to abuse. The Correction Division's rules must "afford the inmate a reasonable opportunity for a fair hearing." ORS 421.190. An inmate who faces an accusation from another unnamed inmate will often have little ability to respond in any way other than by simply denying the accusation. The fairness of the hearing will then depend in large part on the hearings officer's careful evaluation of the credibility of the unnamed inmate informant and of the accused inmate. That evaluation must be based on evidence which is sufficiently reliable to be admissible and on reasoning which has a logical relationship to credibility. Both requirements are missing here.

I agree with the majority that OAR 291-105-041(5) establishes the same standard for evidence in prison disciplinary hearings as the Administrative Procedures Act provides for other administrative hearings, with the exception of the provision for unnamed informant testimony. ORS 183.450(1). Polygraph evidence does not meet that standard. It is not evidence on which reasonable people would rely in the conduct of their affairs. The hearings officer's use of it and his apparent misuse of the informant's alleged eyewitness status are fatal defects in his credibility determination. We should reverse and remand for reconsideration.

The hearings officer did not take testimony from the informant or otherwise see him. He could have done so outside of petitioner's presence. *See* OAR 291-105-056(4)(a)(C). The hearings officer thus had no opportunity to judge the informant's demeanor or to question him concerning the details of the incident or for possible bias. Although the hearings officer did have an opportunity to observe petitioner, he made no findings on the basis of petitioner's demeanor, nor did he make an explicit finding concerning petitioner's credibility. He gave several reasons for finding the informant credible:[1]

"Capt. Barth submitted to the Hearings Officer a memorandum, dated March 10, 1986, in which the inmate informant was identified, as well as the reason he considered the informant to be credible and reliable in the case at issue. Further, this memorandum contained additional information concerning the informant's status as a past and proven informant. The Hearings Officer finds Capt. Barth's informant to be credible and reliable in the case at issue, based on Capt. Barth's information, and the informant's status as an eyewitness to the incident. * * *

"In a memorandum dated March 18, 1986, Capt. Barth provided information which explained that the informant in the case at issue was administered a polygraph examination by Detective Fox of the Oregon Department of State Police. Detective Fox is a fully certified, trained, and licensed polygraph examiner under the provisions of the Oregon Revised Statutes. The polygraph examination centered around specific statements written by the inmate informant that concerned Inmate Wiggett's involvement in the case at issue.

---

[1] The majority reads this statement as containing two separate findings that the informant was credible. I think it clear that the hearings officer gave several reasons to support *one* credibility finding.

Inmate Wiggett was described, amongst other issues, as having participated in assaulting Inmate Peterson in the Recreation Yard, and that he did hit Inmate Peterson on the left side of the head. It was Detective Fox's conclusion that the informant had been truthful in the written information he provided during the course of the polygraph examination."

The hearings officer thus relied on three grounds for finding the informant credible: In the past, he had provided information that had proved accurate; he was an eyewitness; and he had passed a polygraph examination.[2] That the informant's information had proved reliable in the past could suggest that the information in this case was also reliable. It was a factor which the hearings officer could properly consider.

The other grounds on which the hearings officer relied cannot support his decision. The informant's supposed eyewitness status is of no value in assessing his credibility.[3] The only evidence that the incident ever occurred is the informant's statement. Thus his status as an eyewitness depends on the truth of his statement. To use his claimed eyewitness status as evidence that his statement is truthful is pure bootstrapping. *Shumway v. OSP*, 294 Or 462, 466 n 1, 657 P2d 686 (1983).

The remaining issue is the polygraph evidence. Under our previous cases, that evidence was inadmissible without petitioner's consent. In *Higley v. Edwards*, 67 Or App 488, 492, 678 P2d 775 (1985), we held that it is error under ORS 183.450(1) to admit polygraph evidence in a contested case hearing over the objection of a party.[4] The polygraph in

---

[2] The hearings officer listed two additional grounds in a confidential addendum to his report. I would hold that the first of those grounds is of no value for reasons which should be clear to the hearings officer from this dissent. The second could support the hearings officer's conclusion.

[3] The majority appears to argue only that the informant's eyewitness status would support the reliability of the evidence *if* the informant was credible. I do not disagree with that conclusion. However, the hearings officer's apparent reliance on the informant's role as an eyewitness in determining that the informant was credible undercuts his reasoning on that point.

[4] Petitioner did not object to the admission of the polygraph evidence. He had no opportunity to do so. The first petitioner knew of its existence was when the hearings officer told him that he was relying on it to find the informant credible. Any objection at that point would obviously have been futile. We cannot assume that petitioner consented to the admission of the polygraph evidence. *Cf. Branton v. OSP*, 83 Or App 571, 732 P2d 926 (1987) (petitioner agreed to take polygraph test with understanding that it would be used as evidence); *Graham v. OSP*, 83 Or App 567, 733 P2d 39 (1987) (petitioner did not object at hearing to use of result of polygraph test).

*Higley* was also offered to bolster the credibility of an absent witness.

Since *Higley,* the Supreme Court has thoroughly examined the acceptability of polygraph evidence under the Evidence Code and has concluded that it is inadmissible, at least without a stipulation. *State v. Brown,* 297 Or 404, 687 P2d 751 (1984); *but see State v. LaStair,* 81 Or App 558, 726 P2d 1193 (1986), *rev den* 302 Or 614 (1987) (use of polygraph results for impeachment). Although *Brown* is not directly controlling in an administrative hearing, the court's reasoning is relevant. It concluded from its survey of the scientific studies that

"no judgment of polygraph testing's validity or potential rate of error can be established based on available scientific evidence. The polygraph test is, in reality, a very complex process that involves much more than the instrument or the polygram. Although the instrument is essentially the same for all applications, the types of individuals tested, the training of the examiner, the purpose of the test, the type of test utilized, the questions asked, among many other factors, can differ substantially." 297 Or at 433.

Although the court conceded that the polygraph could be helpful to the trier of fact in some circumstances, it decided that the potential prejudice is too great to allow admission of unstipulated test results. It has consistently followed that position in judicial proceedings of all kinds.

When the Supreme Court, as trier of fact, had to consider the weight to give to a stipulated polygraph, it expressed serious reservations about the polygraph's reliability and apparently gave little weight to the results. *In re Herbert D. Black,* 251 Or 177, 186-191, 444 P2d 929 (1968). It is too easy for any trier of fact to be overpowered by the polygraph and to ignore or fail to seek other evidence relevant to credibility. *State v. Brown, supra,* 297 Or at 437-439. Even if the evidence is admitted, it is impossible to determine what weight to give the polygraph without considering the factors which the court described in *Brown.* There is no evidence on those points in this case; all the record contains is the examiner's conclusion. The Supreme Court's discussion and holding in *Brown* reinforce our holding in *Higley* that polygraph evidence is not admissible under ORS 183.450(1). Rather than

overrule *Higley,* I would adhere to it and hold that polygraph evidence is not admissible under OAR 291-105-041(5) in the absence of a stipulation.[5]

In determining the undisclosed informant's credibility, the hearings officer gave weight to two considerations which I would hold to be entitled to no weight or to be inadmissible: the informant's supposed eyewitness status and the polygraph. As the majority shows, there is other evidence which could support his finding that the informant is credible. However, his reliance on two improper considerations requires that we remand the case for reconsideration. *See Palen v. State Bd. Higher Education,* 18 Or App 442, 463, 525 P2d 1047, *rev den* (1974). Because the majority does not do so, I dissent.

Joseph, Chief Judge, and Van Hoomissen and Newman, Judges, join in this dissent.

---

[5] The majority states that polygraph evidence should be admissible, because it is particularly useful in a prison disciplinary case. That is not the proper standard. The question, rather, is whether it is the kind of evidence on which reasonable persons would rely in the conduct of their affairs. As the Supreme Court showed in *State v. Brown, supra,* the polygraph combines questionable reliability with an aura of authoritativeness. Such evidence, therefore, is no more useful in a prison disciplinary case than in any other proceeding. To the extent that it diverts the hearings officer's attention from more reliable grounds for determining credibility, the polygraph's role may be positively harmful. The Supreme Court will not permit the use over objection of a polygraph in a non-jury judicial proceeding tried to a legally trained judge; I cannot conceive that it would, nevertheless, consider it sufficiently reliable to be used in an administrative proceeding before a lay hearings officer.