Argued and submitted December 9, 2008, affirmed July 15, 2009

# Chip WAISANEN,
*Petitioner,*

*v.*

## CLATSKANIE SCHOOL DISTRICT #6J
and Fair Dismissal Appeals Board,
*Respondents.*

Fair Dismissal Appeals Board
FDA0502; A133611

215 P3d 882

John S. Bishop argued the cause for petitioner. With him on the briefs was McKanna Bishop Joffee & Sullivan, LLP.

Bruce A. Zagar argued the cause for respondent Clatskanie School District #6J. With him on the brief was Matthew T. Racine.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent Fair Dismissal Appeals Board. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

Edmonds, P. J., concurring.

**WOLLHEIM, J.**

The Clatskanie School District dismissed petitioner, a full-time contract teacher, on the statutory grounds of immorality, ORS 342.865(1)(b), and neglect of duty, ORS 342.865(1)(d). Petitioner appealed to the Fair Dismissal Appeals Board (FDAB). After a hearing, the FDAB found that true and substantiated facts supported the dismissal. Petitioner now seeks judicial review, advancing three assignments of error: (1) that the FDAB did not follow the proper procedure; (2) that the FDAB erred by admitting the results of a polygraph examination; and (3) that the FDAB's order is not supported by substantial evidence. We affirm.

## PROCEDURE TO DISMISS A CONTRACT TEACHER

To provide context, we first explain the procedure by which a contract teacher may be dismissed from employment.[1] Given that petitioner is a contract teacher, he may be dismissed only upon certain specified grounds, including immorality or neglect of duty. ORS 342.865(1)(b), (d). Authority to dismiss a contract teacher is vested in the district school board subject to the FDAB appeal process. ORS 342.895(2). Judicial review of final orders of the FDAB is governed by the Oregon Administrative Procedures Act (APA). *See* ORS 342.905(9) (so stating). On judicial review under the APA, the court may affirm, reverse, or remand the order. ORS 183.482(8)(a).

## FACTS

Petitioner taught metal shop at Clatskanie High School from 1977 until his termination in 2005. Petitioner's termination was based on a complaint made in April 2005 by L. K., who had been a Clatskanie High School student from 1975 to her graduation in June 1979. L. K. stated that she had been a student in petitioner's metal shop class, and that,

---

[1] ORS 342.815(3) provides:

" 'Contract teacher' means any teacher who has been regularly employed by a school district for a probationary period of three successive school years, and who has been retained for the next succeeding school year. The district school board may enter into agreements that provide for a shorter probationary period of not less than one year for teachers who have satisfied the three-year probationary period in another Oregon school district."

when she was approximately 16 years old, roughly during 1978, petitioner had had sex with her on at least three to four occasions. Initially, L. K.'s husband contacted Michael Corley, Clatskanie School District Superintendent, in April 2005, to report that his wife had been involved in a criminal act with petitioner while she was a high school student. Corley telephoned L. K. that evening, and L. K. provided additional details about the incident because she had heard that petitioner was the subject of an investigation concerning alleged violations of the district's sexual harassment policy.

Corley found L. K.'s allegations to be plausible; however, L. K. indicated that she was reluctant to go public. Corley notified the police and the district's legal counsel about L. K.'s allegations and learned that the statute of limitations on any possible criminal conduct had run. Corley did not immediately pursue further investigation of L. K.'s complaint, but he documented his April communications with L. K. in a May 5, 2005, summary.

Between April and August 2005, Corley heard additional rumors concerning inappropriate sexual conduct by petitioner. Many of the complainants remained anonymous, and Corley was unable to determine the veracity of those allegations. As a result, Corley recontacted L. K. to determine whether she would be willing to go public with her complaint. L. K. indicated that she was willing to go public and would cooperate in the district's investigation.

Corley arranged for Kim Hoyt, an attorney from the district's legal counsel's office who had experience interviewing victims of sexual abuse, to interview L. K. Corley asked Hoyt to conduct an investigation, to determine whether L. K.'s allegations were founded, and to advise Corley as to his obligations as school district superintendent. After meeting with L. K., Hoyt discussed the interview with Corley. Hoyt concluded that L. K. was credible, that she had a reasonable explanation as to why it had taken her so long to come forward, that she had been consistent in the details that she had provided, and that her demeanor was consistent with someone who appeared to be truthful. Hoyt gave Corley a written investigation summary detailing the interview and Hoyt's assessments.

The next day, Corley sent petitioner a letter informing him that a complaint against him had been made and describing the general nature of the complaint. The letter further stated that Corley would be scheduling a meeting with petitioner to discuss the allegations. Four days later, Corley sent a second letter to petitioner that included Hoyt's investigation summary and notification to petitioner that Corley had scheduled a predismissal meeting to provide petitioner with the opportunity to refute the charges. The letter further indicated that, following petitioner's response to the complaint, Corley would decide whether to initiate the fair dismissal process for petitioner's termination as a contract teacher.

The predismissal meeting was held on September 9, 2005, and was attended by petitioner, petitioner's attorney, Corley, the district's legal counsel, and a school staff member who was there to take notes. Petitioner emphatically denied the accusations, and stated that he had no idea why L. K. had waited 26 years before making a complaint. Petitioner's attorney argued that the district should investigate the complaint further before making a dismissal recommendation. At the conclusion of the meeting, Corley stated that he would recommend petitioner's dismissal to the board.

After the predismissal meeting, Corley directed the district's legal counsel to further investigate the allegations. Hoyt telephoned L. K. to request that she take a polygraph examination. L. K. initially had many questions, and Hoyt responded by recommending that she talk it over with her family before deciding whether to take the polygraph examination. L. K. later agreed to submit to a polygraph examination.

On September 26, 2005, L. K. completed a polygraph exam. At the direction of the polygraph examiner, L. K. wrote a brief statement regarding her complaint:

> "When I was 16 years old, [petitioner] had sexual intercourse with me at Clatskanie High School. I believe there were 4 or 5 encounters and they took place in the school gymnasium area. [Petitioner] was the wrestling coach, so he had access to the mats."

The examiner concluded that the physiological responses of L. K. to the examiner's questions were consistent with those of a person who was answering those questions truthfully.[2]

On October 4, 2005, Corley wrote a letter to petitioner, informing him that, as superintendent, he would be recommending petitioner's dismissal on the statutory grounds of immorality and neglect of duty at a special meeting of the Clatskanie School District Board of Directors scheduled for November 3, 2005. Attached to that letter were a statement of facts containing specific allegations, the investigation summary, an addendum describing the polygraph examination and the examiner's conclusions, and a separate written report prepared by the polygraph examiner describing the polygraph exam protocol and summarizing his conclusions.

Petitioner, along with his attorney, attended the November 3, 2005, school district board meeting. Petitioner asserted that the board should reject the dismissal recommendation and identified facts that contradicted some of the evidence adduced in the investigation. Petitioner argued that the facts refuted Corley's evidence concerning (1) whether petitioner had ever taught L. K. in one of his metal shop classes; (2) the time period at issue; and (3) the location where petitioner and L. K. allegedly had sexual intercourse. At the conclusion of petitioner's presentation, the school board recessed without taking a vote and instead deferred further deliberations to their next meeting on November 10, 2005.

In the week following the November 3 meeting, the school board asked petitioner to respond to five questions designed to resolve apparent factual discrepancies from the November 3 meeting. Petitioner provided written responses

---

[2] In his written assessment, the polygraph examiner reported:

"[L. K.] was given a polygraph examination. She did not exhibit significant physiological responses to the following relevant questions:

"Question #1 - Did you lie in the statement you just wrote for me?

"Answer - No.

"Question #2 - Did you tell the complete truth in the statement that you just wrote for me?

"Answer - Yes."

to those questions that, in sum, disclosed to the best of his recollection the courses that he taught in the 1977 to 1978 and 1978 to 1979 school years; where his classroom was located during those school years; that he had no recollection of having L. K. as a student or as a student assistant in any of his classes.

Before the November 10 board meeting, Hoyt conducted two telephone conversations with L. K. regarding the possibility that L. K. had been a student assistant for petitioner and to ask questions about the location of the alleged abuse. L. K. provided additional details about the time period and location of the sexual encounters, including a detailed description of petitioner's classroom and the "new" gym where she alleged that some of the sexual encounters had occurred.[3] L. K. also acknowledged, in response to a question from Hoyt, that it was possible that her sexual encounters with petitioner had occurred while she had been a student assistant for petitioner. L. K. further disclosed that it was possible that her encounters with petitioner could have occurred after her 17th birthday on May 12, 1978, but that the abuse had stopped well before her high school graduation in 1979. Hoyt wrote a second addendum to the investigation summary, in which she reported the substance of her conversations with L. K.

At its November 10, 2005, meeting, the school district board voted in open session to dismiss petitioner. That decision was based on petitioner's written responses to their questions, Hoyt's second addendum summarizing her two conversations with L. K., and the information that the board had reviewed from the November 3 meeting.

Petitioner timely appealed the dismissal to the FDAB. Prior to the FDAB hearing, the district's legal counsel

---

[3] At or near the time of the alleged events, a new Clatskanie High School was being built. Petitioner taught metal shop classes at both the "old school" and the "new school." Petitioner challenged L. K.'s description of the location at which she and petitioner had had sex. Petitioner asserts that L. K. described the gym at the "new school"; that, because the new school was not certified for occupancy until after L. K. had graduated from high school, L. K.'s allegations lack credibility; and, therefore, there was an insufficient basis to dismiss petitioner from his teaching position.

asked the FDAB to issue a subpoena for L. K.'s polygraph examiner to appear at the hearing. Petitioner objected and moved for an advance ruling to exclude all polygraph evidence. Additionally, petitioner filed a supplemental motion renewing his objection to the subpoena. Finally, petitioner requested that the evidence at the hearing be limited to only what the school district board had relied on to support Corley's dismissal recommendation.

The FDAB panel overruled petitioner's objections to the subpoena and denied his motion to exclude all evidence related to the polygraph examination. At the hearing, the FDAB denied petitioner's supplemental motion.

## FDAB DECISION

The FDAB is charged with reviewing dismissal decisions upon an appeal by a dismissed contract teacher. After petitioner's hearing, the FDAB found that most of the facts relied on by Corley in his October 4, 2005, notice to petitioner were true and substantiated. Specifically, the FDAB found that petitioner taught metal shop during the time that L. K. was a student; that L. K. had been a student assistant for a metal shop class taught by petitioner, that petitioner did not recall having L. K. as a student or student assistant in any of his classes; that during the relevant time period a new Clatskanie High School was being built, including a new gym; that the gym was one of the first parts of the new school to be completed; and that petitioner had sexual relations with L. K. while she was a student. In addition, the FDAB stated that it found L. K. credible based on her live testimony and her specific recollection of important events, as opposed to relying primarily on the results of the polygraph examination. Accordingly, the board concluded that the statutory grounds for dismissal for immorality and neglect of duty were met.

## FIRST ASSIGNMENT OF ERROR

Petitioner argues that "[t]he FDAB erred in holding that district superintendent Corley relied on 'substantiated' facts when he recommended [petitioner's] dismissal." Petitioner asserts that, pursuant to ORS 342.905(6), the FDAB's

review of whether the facts relied upon by the school district are "true" and "substantiated" must be restricted to the evidentiary record that existed at the time that the superintendent recommends dismissal. Petitioner contends that the record at the time of Corley's October 4, 2005, dismissal recommendation is insufficient to substantiate the district's findings and that ORS 342.905(7) requires his reinstatement.[4] Respondents, the Clatskanie School District and the FDAB, each assert that petitioner misreads ORS 342.905. Respondents argue that the FDAB's review is based upon the entire record before the FDAB, and that that record substantiates the facts relied upon by the school board for dismissal. We agree with respondents.

The parties' arguments present a question of statutory construction requiring us to determine how ORS 342.905(6) defines the FDAB's role in reviewing the dismissal of a contract teacher. We review the FDAB's interpretation and application of a statute for errors of law. ORS 183.482(8)(a). In construing a statute, we begin by examining the statute's text in context, along with any legislative history offered by the parties. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In this case, neither party offers any legislative history, and we determine that the legislature's intent is unambiguous from the statute's text and context. *See* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court."); *Gaines*, 346 Or at 172 (stating methodology).

---

[4] ORS 342.905(7)(a) provides:

"Subject to subsection (6) of this section and paragraph (b) of this subsection, if the Fair Dismissal Appeals Board panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal or nonextension, and so notifies the contract teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, the teacher shall be reinstated and the teacher shall receive such back pay as ordered by the Fair Dismissal Appeals Board panel for the period between the effective date of the dismissal or nonextension and the date of the order reinstating the teacher, or the date when the district actually reinstates the teacher, whichever is later. However, nothing in this section requires a school district to pay the teacher until the reinstatement occurs if the district has other legal grounds for not reinstating the teacher."

■        We start with ORS 342.905(6), which provides:

"When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written decision and send it to the contract teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The Fair Dismissal Appeals Board panel shall determine *whether the facts relied upon to support the statutory grounds cited for dismissal or nonextension are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited.* In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. The panel shall not reverse the dismissal or nonextension if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or nonextension was unreasonable, arbitrary or clearly an excessive remedy."

(Emphasis added.) Thus, under the text of the statute, the FDAB panel is charged with determining whether the facts relied on to support the statutory grounds cited for dismissal are true and substantiated. In that capacity, the FDAB has the role of "primary factfinder." *Bergerson v. Salem-Keizer School District*, 341 Or 401, 410, 144 P3d 918 (2006).

        The Supreme Court has interpreted ORS 342.905(6) to create a three-stage review process:

"First, the [FDAB] panel determines whether the facts upon which the school board relied are true and substantiated. Second, the panel determines whether the facts found to be true and substantiated constitute a statutory basis for dismissal. Third, even if the facts constitute a statutory basis for dismissal, the panel may reverse the school board's dismissal decision if the decision nonetheless was 'unreasonable, arbitrary[,] or clearly an excessive remedy.'"

*Bergerson*, 341 Or at 412 (footnote omitted).

■ We understand petitioner to argue that the scope of the evidentiary record is restricted at the first stage to the record at the time of the superintendent's recommendation because it is only within the second stage that the statute compels the FDAB to consider the facts "in light of all the circumstances and additional facts developed at the hearing." We disagree. In our view, the statutory text does not support petitioner's argument. At the first stage, the FDAB examines only whether the factual allegations relied upon by the school board are true and substantiated *regardless* of whether a petitioner may have explanations or other evidence that provides context for interpreting those allegations. However, the statutory text compels the FDAB, at the second stage, to consider "all the circumstances and additional facts developed at the hearing" to determine whether dismissal is statutorily justified in light of that context. *See* ORS 342.865(1) (listing grounds for dismissal). Petitioner's argument is inconsistent with the FDAB's role as the primary factfinder in the dismissal process. The hearing before the FDAB is the first hearing required by statute at which an accused may present evidence. *Bergerson*, 341 Or at 410. Petitioner's proposed construction would therefore compel the FDAB to ignore all of the evidence presented by the accused in determining whether the allegations are true and substantiated. That result would run counter to FDAB's role as primary factfinder, and we conclude that that construction is wholly implausible.

■ The FDAB properly reviewed the facts relied upon to support Corley's recommendation of dismissal on the statutory grounds of immorality and neglect of duty based on the entire evidentiary record. The FDAB did not err when it found, pursuant to ORS 342.905(6), that the facts relied on by the school district board to support the statutory grounds for petitioner's dismissal were true and substantiated.

SECOND ASSIGNMENT OF ERROR

■ In his second assignment of error, petitioner asserts that the FDAB erred by admitting evidence of L. K.'s polygraph examination. We review agency rulings on the admissibility of evidence using a two-step process: (1) we determine as a matter of law whether the admitted evidence is of a type

on which prudent persons commonly rely in the conduct of their serious affairs; and (2) we review the agency's rulings on the admissibility of evidence for abuse of discretion. ORS 183.450(1); *Bonneville Auto Ins. v. Ins. Div.*, 53 Or App 440, 449, 632 P2d 796 (1981).

Petitioner argues that "[p]olygraph evidence should be inadmissible in FDAB proceedings for the same reasons that it has been held inadmissible in proceeding[s] governed by the Oregon Evidence Code: it is highly prejudicial and of dubious validity." In *State v. Hammond*, 218 Or App 574, 577-82, 180 P3d 137 (2008), we reviewed the Oregon Evidence Code and relevant case law, focusing on the admissibility of polygraph examination results in criminal and civil proceedings. In that case, we concluded that in the context of probation revocation hearings, the application of the evidence code is not required and there is no *per se* prohibition on the admission of polygraph examination results. *Id.* at 580.

Here, the context is an FDAB hearing. As stated previously, an FDAB hearing is conducted in accordance with the APA. ORS 342.905(5)(b). The APA provides, in part:

"In contested cases:

"(1) Irrelevant, immaterial or unduly repetitious evidence shall be excluded but erroneous rulings on evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party. All other evidence of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs shall be admissible. Agencies and hearing officers shall give effect to the rules of privilege recognized by law. * * *"

ORS 183.450. In this case, petitioner argues that the FDAB panel's decision is based substantially on its consideration of inadmissible polygraph evidence. Petitioner relies on *Higley v. Edwards*, 67 Or App 488, 492, 678 P2d 775 (1984), in which we held that it is error to admit results of a polygraph examination over the objection of a party in an APA proceeding. Petitioner's reliance on *Higley* is misplaced. In *Wiggett v. OSP*, 85 Or App 635, 640, 738 P2d 580, *rev den*, 304 Or 186 (1987), we cautioned that our holding in *Higley* as to the *per se*

inadmissibility of polygraph examination results in a contested case hearing under the APA should not be read so broadly.

In *Wiggett*, the rule at issue at that time, OAR 291-105-041(5), provided that "[t]he evidence considered by the [factfinder] will be of such credibility as would be considered by reasonable persons in the conduct of their affairs." We then stated that that evidentiary standard is, for all practical purposes, identical to the standard provided by ORS 183.450(1) and applied in contested case hearings subject to the APA. *Id.* at 638 n 2.

■       *Wiggett* informs our analysis in another respect. In *Wiggett*, as in this case, the petitioner argued for the inadmissibility of polygraph exam results, arguing essentially that polygraph evidence is unreliable. *Id.* at 639. In this case, as in *Wiggett*, and for many of the same reasons, we are not persuaded by that argument. First, the *per se* prohibition on the admission of polygraph evidence that petitioner would have us broaden is limited to proceedings subject to the Oregon Evidence Code; the FDAB proceedings are not subject to the Oregon Evidence Code. Second, petitioner's admonition about the potential for prejudice as the basis for excluding polygraph evidence is not at issue here. In this case, the panel stated that it gave *significantly more weight to L. K.'s live testimony at the FDAB hearing and was convinced of L. K.'s credibility based on her testimony* and her specific recollection of important events, as opposed to relying on the results of her polygraph exam. Third, the practical concerns present in this case militate in favor of admitting polygraph evidence. The alleged events occurred more than 20 years ago. As a result, there was no physical evidence to support or refute the allegations against petitioner. Necessarily, the credibility of L. K. and petitioner were crucial. Under those circumstances, the value and usefulness of polygraph evidence is apparent: The FDAB panel could consider the polygraph evidence as a method of verifying L. K.'s account when she and petitioner are the only "witnesses" to the events at issue.

Finally, we note that L. K. was subject to cross-examination by petitioner and additional questioning by the

panel members. Accordingly, under the circumstances of this case, the admission of polygraph examination results was not error.

## THIRD ASSIGNMENT OF ERROR

■ Petitioner's third assignment of error asserts that the findings of fact on which the FDAB based its order were not supported by substantial evidence. We review all the FDAB final orders for substantial evidence. ORS 183.482(8)(c). Substantial evidence review "does not entail or permit the reviewing tribunal to reweigh or to assess the credibility of the evidence that was presented to the factfinding body." *Tigard Sand and Gravel, Inc. v. Clackamas County*, 151 Or App 16, 20, 949 P2d 1225 (1997), *rev den*, 327 Or 83 (1998) (citations omitted). Further, the reviewing court does not substitute its judgment for that of the agency as to which of two or more permissible inferences should be drawn. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981). Dispositively, the question is whether a reasonable person could have reached the conclusion that the majority of the FDAB panel did. We conclude that there is substantial evidence in the record to support the FDAB's findings of fact.

As stated above, those findings of fact included the following: petitioner taught metal shop during the time that L. K. was a student; L. K. was a student assistant for a shop class taught by petitioner; petitioner did not recall having L. K. as a student or assistant; during that time, the "new" school was under construction; the "new" gym was among the first parts of the school to be completed; and petitioner had sexual relations with L. K. Petitioner points to conflicting evidence about the exact dates, locations, and number of sexual contacts, but those specific facts are not among the FDAB's findings. The FDAB could have found that petitioner did not have sexual intercourse with a student, relying on petitioner's testimony, but the FDAB did not find petitioner's evidence persuasive. Instead, the FDAB found that petitioner did have sexual intercourse with a student, relying on L. K.'s testimony. As primary factfinder, it is the FDAB's responsibility to make factual findings. Substantial evidence supports the FDAB's findings of fact.

In summary, the FDAB properly complied with the procedures under ORS 342.905(6); it was not error for the FDAB to admit evidence of polygraph exam results; and the FDAB's final order is supported by substantial evidence in the record.

Affirmed.

**EDMONDS, P. J.,** concurring.

I agree with the majority's reasoning and conclusions regarding the second and third assignments of error, and I write separately to express my understanding of the gist of petitioner's first assignment of error and how I would decide it.

In his first assignment of error, petitioner makes the following assertions:

"A.    The FDAB [Fair Dismissal Appeals Board] did not determine separately whether district superintendent Corley relied on 'substantiated' facts when he recommended [petitioner's] dismissal * * *.

"* * * * *

"2.    The Fair Dismissal Law requires the FDAB to determine both whether a superintendent's allegations are true and whether they were substantiated by the evidence considered at the time of the superintendent's recommendation.

"* * * * *

"3.    The allegations against [petitioner] were not substantiated."

Later, petitioner explains,

"If FDAB had properly applied this term to the facts that the district relied on when it fired [petitioner], it could have reached just one conclusion: that the facts were 'unsubstantiated' within the meaning of ORS 342.905(7). The facts supporting superintendent Corley's dismissal recommendation did not include 'competent evidence,' nor were they 'adequate to demonstrate or make certain' the claims against [petitioner]."

Later, petitioner concludes,

> "The facts that the district relied upon to dismiss [petitioner] therefore consisted of nothing more than extremely unreliable hearsay evidence. As a legal matter, this type of evidence cannot serve to 'substantiate' facts as intended by the legislature under ORS 342.905(6) & (7)."

I agree with the majority that the predicate to petitioner's first assignment of error is his interpretation of the statutory scheme to require the FDAB to take a snapshot of the evidence before the district and inquire whether that evidence was "true" and "substantiated" at that point in time. The majority answers petitioner's argument by concluding that the statutory scheme evidences the legislature's intent that the FDAB consider, in determining whether the allegations are true and substantiated, all of the evidence before it and not just the evidence upon which the district based its decision.

I would, however, answer petitioner's first assignment by holding that, even if petitioner's construction of the governing statutory scheme is correct, there was sufficient evidence presented by the superintendent to the school board for the FDAB to find that the superintendent's allegations were "true and substantiated" at the time of the superintendant's recommendation. In particular, the superintendant had in his possession a report of a comprehensive investigation by the district's legal counsel and the benefit of a personal interview conducted by counsel with L. K. As a result of that interview, legal counsel had determined that L. K.'s allegations were credible based on her responses together with the other information in the possession of the superintendant at that time. Petitioner criticizes the district for relying on the report of counsel, characterizing it as "nothing more than extremely unreliable hearsay evidence." However, in *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417, 822 P2d 1171 (1991), the court held that "[h]earsay evidence is as admissible under ORS 183.450(1) as any other evidence as long as it meets the statutory test of reliability." (Footnote omitted.) The statutory test for reliability in ORS 183.450(1) is whether the evidence is "of a type commonly relied upon by reasonably prudent persons in [the] conduct of

their serious affairs." In my view, that test was satisfied by the manner and the methods of the investigation conducted by legal counsel. Consequently, I concur with the rejection of petitioner's first assignment of error.