**James R. CATO, Plaintiff-Appellant,**

v.

**Ruth RUSHEN, Warden G. Sumner, Assistant Warden Williamson, O. Nyberg, Assistant Warden, Mr. Kraener, Mrs. Rodriguez, Mr. Tabasck, Captain Calderon, Defendants-Appellees.**

**No. 86–1696.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1987.

Decided Aug. 6, 1987.

As Amended Aug. 14, 1987.

Peter A. Leeming, San Francisco, Cal., for plaintiff-appellant.

Kristofer Jorstad, Bruce M. Slavin, San Francisco, Cal., for defendants-appellees.

Before SNEED, ALARCON and CANBY, Circuit Judges.

SNEED, Circuit Judge:

James R. Cato, a California state prisoner at the time of this suit, appeals the

district court's summary judgment in favor of Ruth Rushen, Director of California's Department of Corrections, and fourteen other defendants employed at San Quentin state prison. Cato's suit, brought under 42 U.S.C. § 1983, alleged that his placement in administrative segregation violated his procedural due process rights because it was based on uncorroborated hearsay statements of a confidential informant. We reverse and remand.

## I.

### FACTS AND PROCEEDINGS BELOW

On March 9, 1981, a confidential informant told Correctional Captain Arthur Calderon of a plan to take hostages to effect escape from the San Quentin state prison. Cato, Johnson, and five other inmates were implicated by the informant in the plot. The informant, who worked in the prison laboratory, said that Johnson asked him to make seven knives out of metal stock to be provided by appellant Cato, who worked in the industries area. The informant asserted that Johnson did not specifically tell him that Cato knew of the plot; Johnson, the informant asserted, merely identified Cato as the source of the metal stock. Cato and Johnson were immediately placed in administrative segregation.[1]

At that point Cato was told of the pending investigation and certain polygraph tests were initiated. The confidential informant submitted to a polygraph test, which was inconclusive with respect to Cato's involvement. Johnson, who denied any knowledge of the plan, in his polygraph test tested deceptive with respect to his denial of his involvement in the plot, and inconclusive with respect to his denial of knowledge of Cato's involvement. Cato's requests for a polygraph test were denied. His request for an investigative employee to assist him in defending the charges was similarly denied.

On April 3, 1981, Program Administrator Martin conducted the plaintiff's disciplinary hearing. Cato was found guilty of an attempt to take hostages, and this finding was upheld on administrative appeal. Martinez, Assistant Director of Appeals Services, subsequently rescinded this disciplinary action and granted Cato a rehearing based on the failure to assign the plaintiff an investigative employee. On August 28, 1981, Cato's disciplinary rehearing was held before Program Administrator O'Shaughnessy, Correctional Counselor Kernan, and Correctional Counselor Fehrenkamp. The plaintiff was once again found guilty.

The tide turned after Cato filed a petition for a writ of habeas corpus in state court. At that point it was stipulated that the disciplinary action would be vacated and that correctional officers could refile the charges if Cato were permitted to take a polygraph examination. Pursuant to the stipulation Cato submitted to a polygraph test, which supported his claim that he was not involved in the plot to take hostages. On the basis of the test results, Cato was released into the general population on February 23, 1982.

Cato brought this 42 U.S.C. § 1983 action, alleging a deprivation of liberty without procedural due process. On November 17, 1985, the defendants filed a motion for summary judgment, which was granted on February 4, 1986. The court ruled, *inter alia,* that the disciplinary committee's finding that the plaintiff had violated a disciplinary rule was supported by a sufficient quantum of evidence. Excerpt of Record at 356. The plaintiff timely filed a notice of appeal.

## II.

### DISCUSSION

In *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court held that the findings of a prison disciplinary board that result in the loss of a protected liberty interest must be supported by "some evidence in the record." *Id.* at 454, 105 S.Ct. at 2773. The defendants concede that the State of California has created a liberty interest, in not being subject to administrative segrega-

1. The fate of the other five inmates, who were implicated but not identified, is unknown.

tion, of which Cato was deprived. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1098 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The State, in depriving the plaintiff of that liberty interest, must do so on the basis of "some evidence in the record." Otherwise procedural due process under the circumstances of this case is not satisfied. *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774. Cato argues that the "some evidence" standard requires evidence possessing some indication of reliability, which he contends was not present in this case.

Before addressing this contention, we wish to point out that at oral argument, Cato's counsel conceded that the *initial* confinement of a prisoner to administrative segregation need not meet the *Hill* standard. The reason is obvious. As the Court in *Hill* recognized, the prison atmosphere is highly charged, and prison officials must be able to act swiftly on the basis of little information to avert dangerous situations. *Id.* at 456, 105 S.Ct. at 2774. Thus, it is not unreasonable for prison administrators to confine inmates to greater security regions on the basis of a rumor pending an investigation into the accuracy of the rumor. However, after prison officials have had an opportunity to investigate the matter, they forthwith must conduct a disciplinary hearing and adjudicate the disciplinary charges against the inmate. It is the final determination of guilt that must be supported by "some evidence." In this case the point at which "some evidence" must exist was August 28, 1981, the date of the final adjudication of Cato's disciplinary charges. The issue now is whether the findings of the disciplinary board were supported by "some evidence." [2]

The *Hill* standard is minimally stringent. The Court stated that "the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. at 2774–75 (emphasis added). Although characterizing the evidence in *Hill* as meager, the Court found the record "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457, 105 S.Ct. at 2775. In examining the record, the court is not to make its own assessment of the credibility of witnesses or reweigh the evidence. *Id.* at 455, 105 S.Ct. at 2774.

■ Nonetheless, there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions. *See Mendoza v. Miller*, 779 F.2d 1287, 1295 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Kyle v. Hanberry*, 677 F.2d 1386, 1390–91 (11th Cir.1982). Here the only evidence implicating Cato was the uncorroborated hearsay statement of a confidential informant. The defendants argue that the informant's reliability was confirmed by a polygraph test that supported the informant's veracity, and by Special Agent Pickett's assertion to Captain Calderon that the informant was truthful.

The informant's reliability, however, is not the critical issue. He only knew what he had been told by Johnson. Johnson was the only person who knew whether Cato was involved. The reliability of Johnson's statements was not enhanced by the results of his polygraph examination. Moreover, Johnson never told anyone that Cato actually knew of the plot; he only told the informant that Cato would supply the metal stock.

While we remain faithful to the Supreme Court's admonition that we should not reweigh evidence or judge the credibility of witnesses, the only evidence in this case implicating Cato is an inmate's statement that was related to prison officials through a confidential informant who had no first hand knowledge of any relevant statements or actions by Cato. Furthermore, the polygraph test of the inmate who made the statement was inconclusive. This is not enough evidence to meet the *Hill* standard.

---

**2.** We review de novo the district court's legal conclusion that the "some evidence" standard was met. *See Toussaint*, 801 F.2d at 1087.

We reverse the district court's grant of summary judgment for the defendants, and remand for proceedings not inconsistent with this opinion.[3]

REVERSED AND REMANDED.

3. The district court made no findings with respect to, and we express no opinion on, the issue of whether each of the defendants has the requisite causal connection with the plaintiff's alleged constitutional injury.