**Terry ZIMMERLEE, Plaintiff-Appellant,**

**v.**

**J.C. KEENEY, Superintendent, Oregon State Penitentiary, Defendant-Appellee.**

**No. 86–4344.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1987.

Decided Oct. 27, 1987.

Marianne D. Bachers, Eugene, Or., for plaintiff-appellant.

Rives Kistler, Salem, Or., for defendant-appellee.

Before WRIGHT, WALLACE and PREGERSON, Circuit Judges.

PER CURIAM:

After a disciplinary hearing at which the board found that an Oregon state prisoner had distributed narcotics within the prison, he was sentenced to six months segregation. He filed a petition for a writ of habeas corpus which the district court dismissed. We affirm.

## FACTS

Terry Zimmerlee is a prisoner at the Oregon State Penitentiary and a member of the Screaming Eagles Motorcycle Workshop Club. Captain Baldwin filed a misconduct report against Zimmerlee based on an informant's testimony that between February and July 1984 Zimmerlee and other members of the Club smuggled drugs into the prison and that on at least one occasion during a Club meeting he had received drugs from inmate Baker. Zimmerlee was given notice of the basis for the charge. A hearing was begun on August 15th, postponed to allow the investigator time to pursue questions posed by Zimmerlee to his witnesses and reconvened on September 6th. Verbatim records were made of each hearing.

The hearing officer found that Zimmerlee was guilty of the manufacture or use of dangerous contraband and assessed six months segregation. The Oregon Court of Appeals and the Oregon Supreme Court denied Zimmerlee's petition for review. The United States District Court dismissed his petition for habeas corpus relief.

## I. STANDARD OF REVIEW

We review *de novo* the district court's dismissal of a petition for writ of habeas corpus. *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985). We also review *de novo* the district

court's legal conclusion that some evidence in the record supports the board's findings. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987) (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1087 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987)).

The parties do not discuss and we assume that Zimmerlee has a protected liberty interest in not being subject to disciplinary segregation. *See Hewitt v. Helms,* 459 U.S. 460, 466–72, 103 S.Ct. 864, 868–72, 74 L.Ed.2d 675 (1983) (state statutory framework and punitive nature of segregation can create a liberty interest). The question, therefore, is whether Zimmerlee was deprived of his liberty interest without due process.

## II. SUFFICIENCY OF THE EVIDENCE

■ Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action. *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974). The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals. *Id.* at 566, 94 S.Ct. at 2979. Due process does not require that an informant's identity be revealed to an inmate. *Wolff,* 418 U.S. at 568–69, 94 S.Ct. at 2980–81; *Mendoza v. Miller,* 779 F.2d 1287, 1294 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). Findings that result in the loss of liberty will satisfy due process if there is some evidence which supports the decisions of the disciplinary board. *Cato,* 824 F.2d at 704 (citing *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985)).

In our search for some evidence, we adhere to the Court's recent pronouncement that the "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution.'"

*O'Lone v. Shabazz,* — U.S. —, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citations omitted).

We take this opportunity to reaffirm our refusal, even where claims are made under the First Amendment, to "substitute our judgment on ... difficult and sensitive matters of institutional administration", for the determinations of those charged with the formidable task of running a prison. *Id.* 107 S.Ct. at 2407 (citations omitted).

Zimmerlee contends that the disciplinary committee's reliance on an unidentified informant's eyewitness account does not constitute some evidence of guilt and that it violates due process. Three other circuits have addressed this issue. *Mendoza,* 779 F.2d at 1293; *Smith v. Rabalais,* 659 F.2d 539, 544–45 (5th Cir. Unit A 1981); *Helms v. Hewitt,* 655 F.2d 487, 501–02 (3d Cir. 1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). All three circuits recognize the need to use such information but also acknowledge the need for reliability. We too have identified the importance of reliability when a disciplinary committee bases its decision upon such information. *Cato,* 824 F.2d at 705. The questions before us are what due process requires in this situation, and whether Zimmerlee received the process he was due in his disciplinary proceeding.

■ We hold that a prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when (1) the record contains some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Review of both the reliability determination and the safety determination should be deferential. *See Mendoza,* 779 F.2d at 1293.

■ Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimo-

ny, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an *in camera* review of the documentation from which credibility was assessed.[1] *Id.* Proof that an informant previously supplied reliable information is sufficient. *Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984); *Mendoza,* 779 F.2d at 1293.

■ The committee found properly that the informant was reliable and credible. It had before it the state police report of investigation, the results of the informant's polygraph examination, statements made by the informant during the examination, a confidential memorandum from Captain Baldwin that included the verbatim statement of the informant, the informant's identity and prior instances in which he had supplied reliable information. The informant was an eyewitness to the smuggling, had previously supplied reliable information, and had passed a polygraph examination. His familiarity with narcotics indicated reliability. Finally, Zimmerlee's answers to questions corroborated the informant's report.

■ Although unnecessary, the polygraph examination further corroborates the informant's testimony. Zimmerlee's objection to the use of the polygraph is without merit. Polygraph examinations are admissible in Oregon prison disciplinary hearings when, as here, they are administered by a state certified and licensed examiner. *Wiggett v. Oregon State Penitentiary,* 85 Or.App. 635, 738 P.2d 580, 583 (Or.App.1987) (*en banc*). Even when Zimmerlee objected to the use of the polygraph, the results were appropriately used to corroborate the informant's testimony. *Id.*

## III. RIGHT TO CALL WITNESSES

■ Zimmerlee also argues he was denied due process because he was deprived of his right to call witnesses. Generally, an inmate is allowed to present witnesses and documentary evidence when to do so does not threaten institutional safety or correctional goals.[2] *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1984); *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979.

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the [disciplinary board] to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Ponte,* 471 U.S. at 496, 105 S.Ct. at 2196 (citing *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979).

The reasons for denying such a request to present witnesses or documentary evidence may be made by prison officials either at the hearing or at a later time. *Ponte,* 471 U.S. at 497, 105 S.Ct. at 2196.

■ Zimmerlee prepared questions for his witnesses, the informant, prison officials and inmates. The investigator for the disciplinary committee saw all six prison officials each of whom had no indication of smuggling before the informant's disclosure. Many questions addressed to the confidential informant were in the miscon-

---

**1.** Zimmerlee did not make a motion for *in camera* review and therefore the confidential report which contained the identity of the informant, the verbatim statements, the polygraph results and questions and the past record of reliability are not now before the court.

**2.** Confrontation and cross examination are not generally required and are left to the sound discretion of the prison official. *Ponte,* 471 U.S.

at 495–96, 105 S.Ct. at 2195. In this case, the prison officials did not allow Zimmerlee to confront or cross-examine the informant due to concerns for the informant's safety. The record, notwithstanding the dissent's assertion to the contrary, shows that prison officials denied confrontation and cross-examination due to these valid concerns.

duct report, but some answers were kept from Zimmerlee because they would reveal the informant's identity and threaten his safety.

The three inmate witnesses who were also charged with the distribution of narcotics were not interviewed.[3] Zimmerlee told the hearing officer that the substance of their testimony would be that he was not involved in drug smuggling. The hearing officer stated that he would accept this statement as true and that there was no need to call the inmates. Zimmerlee agreed.

Zimmerlee was not denied due process by the committee's failure to interview witnesses. Not only did he agree not to interview the witnesses, but the hearing officer provided adequate reasons for his decision.

## IV. SPECIFICITY OF NOTICE

■ Finally, Zimmerlee argues that he was denied due process because of the lack of specificity in the charges prohibited him from preparing an adequate defense. Due process requires that an inmate receive advance written notice of the claimed violation and a written statement of the evidence relied on and reasons for discipline. *Wolff,* 418 U.S. at 563–66, 94 S.Ct. at 2978–80.

■ *Wolff* provides little guidance as to the specificity of notice necessary to satisfy due process. However, the Court has stated that in identifying the safeguards due process requires in this context, courts should remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." *Hill,* 472 U.S. at 454–55, 105 S.Ct. at 2773–74.

Zimmerlee does not dispute that he received notice and a statement of charges. The notice provides the prisoner with the chance to marshal facts to prepare for his defense and to clarify the charges. *Id.* at

564, 94 S.Ct. at 2978. This notice charged Zimmerlee with smuggling marijuana and amphetamines into the prison with members of the Screaming Eagles from February 13, to July 23, 1984. It also indicated that on at least one occasion during a Club meeting inmate Baker had supplied drugs to Zimmerlee. The hearing was postponed for three weeks to allow time to present questions to witnesses and to prepare a defense. The notice was sufficiently specific.

Zimmerlee received due process.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I dissent. Because I believe that Zimmerlee was denied due process, I would reverse the district court's denial of Zimmerlee's petition for a writ of habeas corpus.

The majority correctly states that under *Wolff v. McDonnell,* 418 U.S. 539, 563, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974), due process requirements are satisfied if prisoners subject to disciplinary action receive "advance written notice of the claimed violation and a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken." Due process also allows prisoners to call witnesses in their defense when this practice does not threaten "institutional safety or correctional goals." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. In reviewing prison hearing officers' decisions, we are required to determine whether they are supported by "some evidence." *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987).

I believe Zimmerlee was denied due process in three respects. First, he was not given fair notice of the claimed disciplinary violation. All he was told was that he was accused of smuggling contraband into the prison sometime between February 13, 1984, and July 23, 1984. I do not believe that knowing that the alleged violation oc-

---

**3.** Seven out of the ten witnesses provided answers to Zimmerlee's questions. Zimmerlee's questions to the inmates were: Have you ever seen me use drugs? Have you ever known me to introduce and distribute drugs? Have you ever heard rumors that I did either question one or two? Have you ever conspired with me to do any of the above?

curred at some point during a six month period provides a prisoner with the "chance to marshall the facts in his defense" that is the basis for the notice requirement. *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978. Thus, I submit that we are compelled to hold that, as a facial matter, the notice provided Zimmerlee was insufficient to satisfy the requirements of due process. It is possible that a more specific statement of the dates of the alleged violations would give away the identity of the informant. However, neither the district court nor this court has been provided with any evidence that would justify the nonspecificity of the notice given to Zimmerlee. Because the notice provided Zimmerlee was insufficient on its face, I would hold that it was the Oregon Attorney General's burden to bring before the district court (at least for in camera inspection) evidence that would explain the gross lack of specificity in the notice. The Attorney General has not carried this burden. Therefore, I believe we are compelled to hold that a due process violation has occurred.

The second deficiency in the process accorded to Zimmerlee is that he was not given the opportunity to examine the prosecution witness or to call defense witnesses. Zimmerlee was not allowed to ask questions of the informant either personally or in writing. Again, while this decision by the hearing officer might have been justified by prison security concerns, neither the district court nor this panel have been provided with any information supporting any possible justification. Zimmerlee also asked that he be allowed to call various witnesses, both prisoners and nonprisoners, to testify about his behavior and general character. The hearing officer asked Zimmerlee if those individuals were questioned, "what would their answers be?" Zimmerlee responded, "Well, their answers would be the truth." The hearing officer asked, "And basically what would be the truth?" Zimmerlee answered, "That I'm not involved in nothin', there's nothin' to be involved in." The hearing officer then stated, "Okay, then those questions don't need to be posed to those people, 'cause you've already answered them." ER 67–

68. As Zimmerlee's brief points out, under the hearing officer's reasoning, a prisoner who denied his guilt would never be allowed to bring in witnesses to corroborate his denial. In addition to having no apparent legally cognizable reason for denying Zimmerlee an opportunity to call these witnesses, the hearing officer provided no correctional or security-related reason for this denial. Therefore, I would hold that the denial of Zimmerlee's request to call witnesses constitutes a due process violation.

The third basis on which I would hold that Zimmerlee was denied due process is that the hearing officer's determination of Zimmerlee's guilt was not supported by "some evidence." The hearing officer's decision was based solely on the statement of a single informant. Without the substance of the informant's statement in the record, there is *no* evidence in support of the hearing officer's determination of guilt. The district court and this court have not been provided with a transcript or other document indicating the substance of the informant's statement. While the record contains some evidence that the informant had been reliable in the past and had passed a polygraph test, these indicators of reliability have no value unless they are considered in relation to the substance of the informant's statement. Without knowing the identity of the informant or the substance of the informant's statement, I believe that the district court and this court are unable to determine whether there exists "some evidence" in support of the hearing officer's determination that Zimmerlee was guilty. In other words, we are asked to operate in the dark. For the reasons set forth above, I would reverse the district court's order denying Zimmerlee's petition for a writ of habeas corpus.