**Elmer PRATT, Plaintiff,**

**v.**

**James ROWLAND, Director of Corrections, California Department of Corrections; James H. Gomez, Current Director of Corrections, California Department of Corrections; Daniel B. Vasquez, Warden of San Quentin Prison; Robert Borg, Warden of Folsom Prison; B.J. Bunnell, Warden of Tehachapi Prison; Les Blanks, Program Administrator Tehachapi Prison; G. Crowell, Correctional Lieutenant, Tehachapi Prison; Terry Yearwood, Chief of Classification Services, California De-**

14. The second prong of the Court's inquiry—whether Latham did everything possible under the circumstances to effectuate his intent, is not satisfied for the same reason. The circumstances required Latham to call Bettye Avery and inform her of his intent.

partment of Corrections; and K. Law, Correctional Officer, Tehachapi Prison; Lieutenant Crow, Correctional Officer, Tehachapi Prison; and Kim Walker, Correctional Counsellor, Tehachapi Prison, Defendants.

No. C–89–3367 SAW.

United States District Court, N.D. California.

Aug. 9, 1991.

Stuart Hanlon, Tamburello, Hanlon, Bresciani & Waggener, San Francisco, Cal., Valerie West, Oakland, Cal., for plaintiff.

Paul Gifford, Peter Siggins, Deputy Attys. Gen., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

The Court now considers whether or not the retention of plaintiff Elmer "Geronimo" Pratt in administrative segregation is justified based upon the charges of marijuana trafficking and possession as to which he was found guilty after separate disciplinary hearings. Plaintiff is a maximum security prisoner in the California Correctional Institution at Tehachapi ("Tehachapi"). He seeks a preliminary injunction ordering his release from segregated confinement and his return to the general prison population.

A hearing on this matter was conducted on August 1, 1991. Given the narrow limits on the power of federal courts to review the sufficiency of prison disciplinary proceedings and to override the findings of prison authorities, the Court must conclude that Pratt is not entitled to the relief he seeks.

## I. FACTS

On April 1, 1991, Pratt was placed in administrative segregation on the basis of a statement by a confidential informant and fellow inmate that Pratt was engaged in marijuana trafficking. Correctional Officer M. Stainer interviewed the informant and wrote a confidential memorandum, dated April 2, 1991, memorializing the interview ("Confidential Memorandum").[1] According to the informant, Pratt arranged on two occasions to have packages containing marijuana sent, under fictitious names, to Receiving & Release ("R & R"). Confidential Memorandum. Once the packages arrived at R & R, the informant purportedly retrieved the marijuana, keeping a portion for himself and smuggling the rest to the yard. *Id.* Besides Pratt, the informant implicated another inmate in a similar drug trafficking scheme and accused yet another of smuggling. *Id.*

After Pratt was placed in segregation, prison officials searched his cell. They found a pipe made out of cardboard and foil in a garbage can. Blanks Decl., Exh. E. Such pipes have been used by prisoners to smoke marijuana. Prison officials removed and secured eight boxes of legal materials from the cell and, approximately 24 hours later, found a small quantity of marijuana in a blue folder containing legal materials. *Id.* Memoranda submitted by defendants establish the chain of custody of these materials. *See* Blanks Decl., Exhs. E4–E7. Pratt was then charged with marijuana possession.

Separate disciplinary hearings were held on the marijuana trafficking and possession charges. Pratt was found guilty of both charges. Blanks Decl., Exh. A & B. In connection with his trafficking violation, Pratt was assessed a one-year term in a Secured Housing Unit ("SHU"). Blanks Decl., Exh. F. Pratt received the same penalty as the informant and the other inmates incriminated by the informant. Blanks Decl., Exh. D. A total of four other inmates beside Pratt were disciplined for

---

1. The Court ordered all confidential documents, including the Stainer memorandum, disclosed to Pratt and his counsel pursuant to a tightly drafted protective order. In accordance with this Order, defendants redacted the name of this informant from all confidential documents alluding to him. The Court has nonetheless deduced the identity of this informant from the confidential documents and surrounding evidence, but in the interest of protecting the informant's safety, the Court refrains from naming him here or citing facts which would identify him.

drug trafficking, each receiving a recommended SHU sentence. *Id.*

Pending his transfer to an institution with an SHU, sometime after his impending parole board hearing in August 1991, Pratt has been retained in administrative segregation. Blanks Decl., Exh. F. Prison authorities have determined that Pratt's retention in segregation is appropriate because of the danger his drug involvement poses to the safety and security of the institution. *Id.*

Claiming that his segregation was retaliatory and in violation of his right to due process of law, Pratt requests a preliminary injunction ordering his release from administrative segregation and his return to the general prison population.

## II. STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

The standard for issuing a preliminary injunction is settled. The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of the hardships tips sharply in his favor. *California Cedar Prods. Co. v. Pine Mountain Corp.*, 724 F.2d 827, 830 (9th Cir.1984). These are not two separate tests, but extremes of the same continuum. *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir.1988).

## III. RELEASE FROM SEGREGATION

Pratt contends that he is entitled to a preliminary injunction ordering his return to the general prison population for two reasons: (1) he was deprived of due process in connection with his disciplinary hearing on his marijuana trafficking charge, and (2) prison officials filed the allegedly false

charges against Pratt out of a retaliatory motive.

### A. Due Process Claim

Plaintiff contends that the disciplinary proceedings regarding his marijuana trafficking charge violated his right to due process because the Hearing Officer's finding of guilt was predicated on unreliable and uncorroborated information from the confidential informant. The Court again stresses that it has only limited power to review the Hearing Officer's finding.

■■■■ Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, a statement of the evidence relied on by the prison officials, and the reasons for disciplinary action. *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir.1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974)), *cert. denied*, 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988). The inmate also has the limited right to call witnesses and present documentary evidence in his defense when doing so would not threaten institutional safety. *Id.* (citing *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979). Pratt was afforded these basic guarantees. He chose not to request the presence of any witnesses.

■■■■ Pratt maintains that the notice he received was defective in that it failed to provide him "a chance to marshal the facts in his defense." *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978. The record does not support this conclusion. The Rules Violation Report informed him that he had been identified as a participant in a marijuana trafficking operation involving packages containing marijuana being sent to Pratt under an assumed name.[2] The Report also stated that the trafficking charge was based on confidential memoranda and that marijuana

**2.** The Rules Violation Report states:

On April 15, 1991, while assigned to the Security Squad, as part of an ongoing investigation into drug trafficking activities at CCI IV–B, inmate Pratt, B–40319, has been identified as being involved in a trafficking operation involving quarterly packages containing marijuana being sent to inmate Pratt under an

assumed name. All sources are considered reliable because they have independently provided the same information. (Refer to confidential report ISU # 91–0090 dated 04–02–91 and ISU # 91–0106 dated 04–09–91). On April 2, 1991, suspected marijuana was discovered in the property belonging to Pratt. (Refer to ISU # 91–0092 dated 04–03–91).

had been discovered in Pratt's property. One of the two Confidential Information Disclosure Forms received by Pratt further delineated the nature of the trafficking scheme.[3] The information contained in these two documents was sufficiently specific to enable Pratt to prepare a defense. *See Zimmerlee*, 831 F.2d at 188. Moreover, due process does not require that an informant's identity be revealed to the inmate. *Id.* at 186 (citing *Wolff*, 418 U.S. at 568–69, 94 S.Ct. at 2980–81).

■ The disciplinary board's ultimate finding need only be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. Where, as here, the Hearing Officer's finding of guilt is premised on an account provided by an unidentified confidential source, the record must contain some factual information from which the officer can reasonably conclude that the information is reliable. *Zimmerlee*, 831 F.2d at 186; *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987).[4]

■ The confidential memorandum, which summarizes the confidential informant's statement regarding Pratt's involvement in marijuana trafficking, clearly constitutes *some* evidence that Pratt participated in marijuana trafficking. The question, then, is whether the record contains some indicia that the confidential information is reliable. In making this determination, the Court must bear in mind that review of the reliability determination should be deferential. *Zimmerlee*, 831 F.2d at 186.

Although the indicia in the record regarding the reliability of the confidential information is far from overwhelming, it is sufficient to support the finding that Pratt was guilty of marijuana trafficking. Pratt contends that the only justification offered by prison authorities for the finding of reliability is that a second confidential memorandum, called a "link analysis," purportedly corroborated the first memorandum, which contained the informant's statement. This link analysis, performed by Officers Stainer and Solis, purports to show detailed connections between inmates incarcerated at Tehachapi and civilians concerning drug trafficking. According to this link analysis, these connections were established through intelligence data and statements made by inmates involved in the trafficking activities. The sole allegation in this link analysis which concerns Pratt is the statement that the informant removes marijuana from packages arranged by Pratt. This statement is followed by a citation to the first memorandum containing the informant's statement.

The Hearing Officer found that the two confidential memoranda corroborated each other. The Court agrees that the link analysis provided no independent corroboration of the informant's statement regarding Pratt because the link analysis was *based* on the informant's statement. The link analysis, however, does corroborate a statement made by the informant in the first memorandum regarding the smuggling activities of a certain inmate other than Pratt. As support for the allegation regarding this other inmate, the link analysis cites memoranda *in addition* to the one in which the informant made his statement. Although the link analysis provides no independent corroboration of Pratt's guilt, it

---

**3.** The Confidential Information Disclosure Form, referring to the informant's statement in the Confidential Memorandum, states:

> Confidential memorandum of 04–02–91 indicates that you are involved with trafficking illicit drugs into the institution through IV–B Receiving & Release. You do this by having packages sent into the institution under a fictitious name. Once it arrives at CCI–IV–B R

& R, it is taken out by another inmate and is smuggled to you on the CCI–IV–B yard.

**4.** The record must also contain a statement by a prison official that safety considerations prevent the disclosure of the informant's name. *Zimmerlee*, 831 F.2d at 186. That requirement was satisfied.

does lend the informant some credibility because the link analysis corroborates his statement regarding the other inmate.

Even assuming that the link analysis does not constitute evidence of the reliability of the confidential source, other facts in the record supply that evidence. The Hearing Officer also based his disposition on the information in the Rules Violation Report. The Report states that marijuana was discovered in Pratt's property. While the relatively small quantity of marijuana discovered (2.32 grams) is not persuasive evidence of marijuana *trafficking*, its discovery close upon the heels of the informant's statement enhances the informant's reliability. This is particularly so since the informant accused Pratt of trafficking in marijuana, the drug discovered among Pratt's property.[5]

Finally, one of the Confidential Information Disclosure Forms given to Pratt indicates that the confidential source was deemed reliable because that source incriminated himself in a criminal activity at the time of providing the information. The record substantiates the finding. The informant, Pratt, and the other inmates incriminated by the informant received identical penalties. Pratt suggests that the informant was "caught red-handed" and therefore sought to ingratiate himself to prison authorities by implicating Pratt in the trafficking scheme. The fact that the informant received the same punishment as those he incriminated does not support the suggestion.

The facts here are distinguishable from those in *Cato v. Rushen*, 824 F.2d 703 (9th Cir.1987), where the Ninth Circuit found that a confidential source was not sufficiently reliable to support a disciplinary finding of guilt. Unlike the informant in *Cato*, the source here possessed detailed, first-hand knowledge of the trafficking

scheme. Bearing in mind that the reliability determination must be deferential, the Court concludes that there is some evidence supporting the Hearing Officer's determination that Pratt was guilty of marijuana trafficking and moreover, that the Hearing Officer's reliance on this evidence was not unreasonable.

Although the balance of the hardships in this matter favors Pratt, the Court finds that he has failed to show either a likelihood of success on the merits, or the existence of serious questions going to the merits, regarding his claim that he was deprived of due process in connection with the disciplinary proceedings on his marijuana trafficking charge.

### B. Propriety of Retaining Pratt in Administrative Segregation

■ Even if the Court were to set aside Pratt's marijuana trafficking charge, however, Pratt would not be entitled to release from administrative segregation. Plaintiff has confused the issue of his SHU term—the penalty imposed for his marijuana trafficking violation—with his current confinement in administrative segregation. Prison officials have made an *administrative* determination that Pratt poses a security and safety risk to the institution and accordingly placed and retained him in administrative segregation until he can be transferred to an institution where he can serve his SHU term. *See* Blanks Decl., Exh. F; *see also* 15 Cal.Code of Regs § 3335. While it is true that Pratt's initial placement in administrative segregation on April 1, 1991 was based solely on the trafficking charge, his *retention* in segregation was based on both the trafficking and possession charges. Blanks Decl., Exh. F.

Therefore, before the Court could properly conclude that the administrative finding

---

5. The Court does not take up Pratt's contention that prison authorities planted the marijuana in his legal materials between the time they secured those materials on April 1, 1991, and the time they ultimately searched the materials, approximately twenty-four hours later. The Court is satisfied with the memoranda setting forth the chain of custody. In any event, for the Court to accept Pratt's defense that the marijua-

na was planted on him, the Court would have to make an independent evaluation of the facts underlying his disciplinary charges, substituting its own judgment for that of the prison authorities. This the Court may not do. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987); *Hill,* 472 U.S. at 455-56, 105 S.Ct. at 2773-75.

that Pratt presented a security risk was unwarranted, it would have to agree that *both* the trafficking and possession charges were groundless. Discovery of marijuana in Pratt's property constitutes some evidence of marijuana possession. Hence this Court lacks authority to strike down that charge. For that matter, the quantum of due process required for placement and retention of an inmate in administrative segregation is much lower than for disciplinary confinement. *Toussaint v. McCarthy,* 801 F.2d 1080, 1098–1101 (9th Cir. 1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Given the "highly charged" atmosphere of a prison and the need for swift action, prison authorities had cause at the outset to place Pratt in administrative segregation pending their investigation of the validity of the trafficking charge, even if that charge were based on nothing more than rumor. *Cato,* 824 F.2d at 705. Regarding his retention in segregation, prison authorities have provided him the periodic review mandated by due process. *See Toussaint v. McCarthy,* 926 F.2d 800, 803 (9th Cir.1990). Plaintiff has not suggested that prison authorities has failed to follow the correct procedures in placing and retaining him in administrative segregation.

Of course, administrative segregation may not be used as a pretext for Pratt's indefinite confinement. *Hewitt v. Helms,* 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983). There is no evidence in the record, however, that his four-month confinement is a pretext. If, at some future date, it becomes apparent that Pratt is being retained indefinitely in administrative segregation, the Court will consider granting relief.

## C. Retaliatory Motive

■ Finally, Pratt urges the Court to order his return to the general prison population on the ground that prison authorities brought the marijuana possession and trafficking charges against him out of a retaliatory motive. According to Pratt, prison authorities continually harass and retaliate against him because of his prominence, his vigorous pursuit of legal remedies, his political beliefs, and his impending parole board hearing this month. Pratt urges the Court to consider the long history of reprisals against him by prison officials and to conclude from that history that the possession and trafficking charges are yet another example of retaliatory conduct by the authorities.

The point is not well-taken. The Court first observes that although Pratt has submitted two extensive declarations cataloging a myriad of examples of actions allegedly taken by prison authorities to harass and retaliate against him, there is no evidence in the record that the marijuana trafficking and possession charges were brought against him in retaliation.[6] The Court acknowledges that such evidence would be difficult to produce.

Even assuming, however, that the charges were brought against him so as to curtail Pratt's exercise of his first amendment rights and his right of access to the courts, Pratt must prove that the alleged retaliation did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985). Based on the findings that Pratt was guilty of marijuana trafficking and possession, the Court cannot say that his segregation and SHU penalty did not serve legitimate penological purposes. Moreover, it does not appear that Pratt was selectively disciplined since four inmates other than Pratt were punished for trafficking. Thus, the Court concludes that Pratt has demonstrated neither a like-

---

**6.** The Court rejects the insistence that the reference in some of the trafficking charge reports to "multiple sources" demonstrates the bad faith of the prison authorities. In addition, the Court does not agree that defendants' refusal to give Pratt a urine test at the time he was initially placed in administrative segregation demonstrates their bad faith. Prison authorities do not require or administer urine tests unless an inmate is suspected of being under the influence of drags at the time a test is requested. Blanks Decl., ¶ 26. At the time prison authorities placed Pratt in administrative segregation, they did not suspect that he was under the influence of drugs. *Id.*

lihood of success nor the existence of serious questions going to the merits of his claim that he is entitled to release from segregation on the ground that defendants retaliated against him.

■ Although Pratt is not entitled to release from segregation because of defendants' alleged retaliatory acts against him, the Court is concerned about the possibility that defendants have harassed Pratt in the past because of his prominence and active pursuit of legal action. The old adage "where there's smoke, there's fire," is apt here. Pratt's two declarations provide many examples of recent conduct on the part of some of the defendants which, if proven, would be totally unacceptable. The Court finds that these allegations are too serious, detailed, and numerous to dismiss.[7] *See* Pratt Decl.; Pratt Supp. Decl.

Besides these recent incidents, there have been two judicial findings that prison authorities have violated Pratt's constitutional rights. Pratt prevailed in his federal action filed in 1976 entitled *Pratt v. Rees*, No. C-76-1069-SC. In 1981, a jury found that Pratt had unlawfully been placed in segregated confinement by prison authorities. In addition, this Court issued a preliminary injunction in September 1989 which prohibited prison authorities from transferring Pratt from San Quentin to Folsom prisons on the ground that the transfer was likely retaliatory.

In light of this evidence, the Court finds that Pratt has shown, at a minimum, the existence of serious questions on the merits of his claim that prison authorities have harassed and retaliated against him. Moreover, the balance of the hardships unquestionably tips in his favor.

The appropriate injunctive remedy, at this stage, is for the Court to issue a preliminary injunction enjoining defendants from harassing Pratt or imposing penalties or other reprisals on him because of his high profile status or his legal activities.

The above constitutes this Court's findings of fact and conclusions of law.

Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion for an preliminary injunction ordering his release from administrative segregation and setting aside his marijuana trafficking charge is DENIED.

IT IS FURTHER ORDERED that defendants, their officers, servants, employees, and all persons acting in concert or participation with them are enjoined and restrained from threatening plaintiff with punishment, penalty, or other reprisals; harassing plaintiff; or imposing punishment, penalty, or other reprisals because of plaintiff's exercise of his rights under the First Amendment or his pursuit of legal remedies or his political beliefs or his media attention.

No provision of this Order shall be violated by any artifice or indirection.

---

7. Among other things, Pratt charges that prison authorities framed him for marijuana possession in 1989 at a time when he had no access to the property purportedly containing the marijuana (this charge was later dropped "in the interests of justice"); that prison authorities regularly mutilate his personal and legal mail; and that he was disciplined for a refusal to work in February 1991 on a day when he had been issued a sick lay-in.