952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Antonio ANGULO, Petitioner-Appellant,
v.
B.J. BUNNELL, Warden, Respondent-Appellee.
 No. 91-55538.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 2, 1991.*
Decided Dec. 17, 1991.
 
 Before PREGERSON, CANBY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Antonio Angulo was convicted in state superior court of second degree murder and attempted murder and now appeals the district court's denial of his habeas corpus petition. Angulo claims his due process right to a fair trial was violated by prosecutorial misconduct during examination of witnesses and closing argument. Angulo also claims that reversible error occurred when the trial court failed to instruct the jury on the lesser included offense of involuntary manslaughter. Because the prosecutorial misconduct does not rise to the level of a due process violation, and because the failure to instruct on the lesser included offense does not in this case comprise a constitutional violation, we affirm.
 
 
 3
 * Whether prosecutorial misconduct rises to the level of a due process violation warranting habeas relief is a legal question reviewed de novo. See Zimmerlee v. Keeney, 831 F.2d 183, 185 (9th Cir.1987), cert. denied, 487 U.S. 1207 (1988). Factual findings of the district court are presumed correct unless clearly erroneous. Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir.1986), cert. denied, 484 U.S. 870 (1987).
 
 
 4
 Prosecutorial misconduct constitutes a due process violation only if it is "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)). But the scope of review in this case is "the narrow one of due process, and not the broad exercise of supervisory power that [a federal court of appeals] would possess in regard to [its] own trial court." Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (quoting DeChristoforo v. Donnelly, 473 F.2d 1236, 1238 (1st Cir.1973)). The misconduct is reviewed in light "of the entire trial," id. at 639, with relief granted only if the misconduct "by itself ... infected the trial with unfairness." Id. at 643. We turn to Angulo's specific claims.
 
 
 5
 Possession of Shotguns. Angulo claims the jury was prejudiced when the prosecutor asked Angulo's wife, in violation of a pretrial order excluding evidence about a shotgun found at Angulo's house, whether her husband had more than one gun in the house. The court sustained an objection and rejected the prosecution's offer of proof. The question, while improper in light of the pretrial order, did not directly refer to a shotgun. It did not so infect the trial with unfairness as to make the conviction a denial of due process; and, because the question was not answered and the objection was sustained, it was harmless error. See Greer, 483 U.S. at 765-66 (harmless error rule applies to habeas claims of prosecutorial misconduct).
 
 
 6
 Target Shooting. Angulo's wife testified that she once accompanied her husband into the mountains for a round of target shooting. The prosecutor then asked her a series of questions about her knowledge of her husband's target shooting. The defense objected, and the court instructed the prosecutor to change subjects, but the prosecutor then asked her whether Angulo was familiar with shotguns. The court denied a motion for a mistrial, but instructed the prosecutor that any further questions about shotguns and target shooting would be improper.
 
 
 7
 While the extent of this questioning may have been inappropriate, the immediate trial context surrounding the questioning is a significant factor in deciding whether a due process violation occurred. See Greer, 483 U.S. at 765-66. Here, the witness opened up the subject of gun use by describing her personal knowledge of her husband's familiarity with guns. Furthermore, evidence of target shooting and other gun usage by Angulo was relevant to prove that the shootings in this case were not accidental. See Cal.Evid.Code § 1101. Finally, the trial court rebuked the prosecutor in the presence of the jury, saying that his suggestion that Angulo had guns all over the house was "not the case at all." In light of the context surrounding the prosecution's questions, we do not think Angulo's right to a fair trial was fundamentally compromised. See Greer, 483 U.S. at 765-66.
 
 
 8
 Whether Angulo was Fired by Sapp. The prosecutor asked two witnesses four separate questions about whether they knew Angulo had been fired by one of the victims, Jerry Sapp, from his employment with the Sierra Tissue Company. The trial judge sustained objections and told the prosecutor to avoid the questions until Angulo's employment records could be reviewed during an ensuing recess. After the prosecution disregarded these instructions, the court again sustained a defense objection, and instructed the jury to disregard the prosecutor's questions and "insinuations" about a possible motive for Angulo to kill Sapp. While we do not condone the prosecutor's questioning, we believe that the questions--viewed in light of the trial court's strong limiting instruction to the jury--did not infect the entire proceedings with unfairness. See Donnelly, 416 U.S. at 643. Furthermore, the Supreme Court has stated that it presumes juries do not disregard clear instructions from presiding judges, such as the instruction here to disregard the prosecutor's inappropriate questions. See Abney v. United States, 431 U.S. 651, 665 (1977).
 
 
 9
 Angulo's Bad Temper. The prosecutor asked Angulo's uncle, Anselmo Angulo, as well as other character witnesses, whether they knew Angulo had a bad temper and yelled at his wife. When Anselmo Angulo denied that appellant Angulo had a bad temper, the prosecutor elicited testimony from a police investigator that Anselmo Angulo stated before trial that Angulo had a bad temper, as well as testimony from a neighbor of Angulo to the same effect. The questions posed to the defense character witnesses, and the testimony of Angulo's neighbor, were proper impeachment designed to challenge the veracity of the witnesses or, alternatively, their degree of familiarity with Angulo, and thus the relevance of their testimony. See Michelson v. United States, 335 U.S. 469, 471-73, 486-87 (1948). The testimony of the police investigator was properly admitted as evidence of a prior inconsistent statement made out of court by the witness, Anselmo Angulo. Cal.Evid.Code § 1235.
 
 
 10
 Whether Wayland Had Ever Been Arrested. In an attempt to portray David Wayland, who survived the shooting incident, as a sympathetic victim, the prosecutor asked Wayland whether he had ever been arrested. This is not admissible evidence, see Cal.Evid.Code §§ 786, 1101(a), but it did not violate due process because the court granted a motion to strike, and admonished the jury to disregard the question. See Greer, 483 U.S. at 766.
 
 
 11
 Whether a Witness Was Threatened. The prosecutor asked a prosecution witness who was employed by Sierra Tissue, the company owned partially by the deceased victim, Sapp, whether he had been threatened prior to testifying in the case on behalf of the prosecution. This question was in rebuttal to defense questioning on cross-examination about whether the witness felt he would lose his job if he testified "the wrong way." Angulo failed to object to this evidence at the time it was presented by the prosecution. We find it difficult to conclude that testimony which Angulo failed to object to at the time offered was so prejudicial as to deny him his right to a fair trial. In any event, since the admission of the rebuttal evidence did not implicate a specific federal constitutional right, such as the privilege against self-incrimination or the requirement that confessions be voluntary, it cannot serve as grounds for habeas relief. See Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir.), cert. denied, 393 U.S. 889 (1968).
 
 
 12
 Prejudicial Closing Argument. The prosecutor stated during closing argument that defense counsel was good at what he was paid to do, "to get you [the jury] to acquit the defendant at all costs." This statement did not, by itself, constitute a due process violation. The prosecutor "did not manipulate or misstate the evidence, nor did [his argument] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Darden v. Wainwright, 477 U.S. 168, 182 (1986). The court also immediately instructed the jury to disregard the prosecutor's statement. Finally, the inflammatory nature of the statement was not as strong as other closing arguments that the Supreme Court has nonetheless considered not in violation of due process. See, e.g., id. at 179-82.
 
 
 13
 Our review of the record indicates the district court's conclusion that the evidence was "overwhelming" in support of the conviction was not clearly erroneous. See Carter, 806 F.2d at 1375. We conclude that any prosecutorial misconduct did not so infect the entire trial as to cause Angulo to be denied of his right to a fair trial. See Donnelly, 416 U.S. at 639, 643.
 
 II
 
 14
 Angulo argues that the state trial court committed reversible error by failing to instruct on the lesser included offense of involuntary manslaughter. In a non-capital case, we have stated that the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." James v. Reese, 546 F.2d 325, 327 (9th Cir.1976) (per curiam). The Supreme Court also has held that a constitutional right to a lesser included offense instruction is only implicated in capital cases. Beck v. Alabama, 447 U.S. 625, 637-38 (1980). This was not a capital case. The state did not request the death penalty, and the jury convicted Angulo of second degree murder, which is not a capital offense. Cal.Penal Code § 190(b). Thus, under James and Beck, Angulo is not entitled to federal habeas relief on the basis of the omitted jury instruction on the lesser offense.[1]
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We also note that the court instructed the jury on the lesser included offense of voluntary manslaughter, which like involuntary manslaughter, involves a homicide committed without malice. Cal.Penal Code § 192. The jury in this case, however, concluded that malice aforethought was present and found Angulo guilty of second degree murder. In light of the district court's finding that there was substantial evidence to support the murder conviction, failing to give an involuntary manslaughter instruction was not prejudicial to Angulo in any event. See Hopper v. Evans, 456 U.S. 605, 613-14 (1982)