139 F.3d 907
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James F. PIFER, Petitioner--Appellant,
v.
Charles D. MARSHALL, Warden, Pelican Bay State Prison;
Daniel McCarthy, Director; James Rowland; Robert G. Borg;
William Bunnell; T. Chapo; Lt. J.M. Gonzales; J.J.
Johnson; J.P. Walker; James Gomez, Director, California
Department of Corrections; Terry Peetz, Deputy Warden,
Pelican Bay State Prison, Respondents--Appellees.
 No. 95-16221.
D.C. CV-87-01623-EJG.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jun. 11, 1996.
Decided Feb. 24, 1998.
 
 Appeal from the United States District Court for the Eastern District of California Edward J. Garcia, District Judge, Presiding.
 Before HUG, Chief Judge, SCHROEDER, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James F. Pifer ("Pifer") was convicted of murder, robbery, and the sale of heroin; he is currently serving a life sentence in the California prison system. California correctional officials have identified him as an associate of the Aryan Brotherhood, a prison gang of legendarily violent propensities.
 
 
 3
 Pifer filed a habeas petition challenging his indefinite term of confinement in the Security Housing Unit ("SHU") at Pelican Bay State Prison. He contends his indefinite confinement in the SHU violates the Due Process Clause and the Eighth Amendment. Pifer also argues that he is being denied a meaningful opportunity for parole in violation of due process and that the state's "debriefing requirement" violates the Due Process Clause and the Fifth Amendment. The district court denied Pifer's petition. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm in part and remand for reconsideration in light of intervening authorities.
 
 
 4
 I. Indefinite Confinement in the SHU and Due Process
 
 
 5
 Pifer contends that he has a constitutionally protected liberty interest in not receiving an indefinite term of confinement in the SHU. Because Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), issued after the district court denied Pifer's petition, substantially altered the contours of state-created liberty interests in the prison disciplinary context, we remand for reconsideration of the record in light of Sandin.
 
 
 6
 Due process protection in the prison disciplinary context derives from two sources. The first is the Due Process Clause of the Fourteenth Amendment, which by its own force extends procedural safeguards to a prisoner when his or her liberty is restrained in a way that "exceed[s] [the prisoner's] sentence in ... an unexpected manner." Sandin, 515 U.S. at 484.[1] The second source of liberty interests protected by the Due Process Clause is state action that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.
 
 
 7
 Although the existence of the second category--state-created liberty interests in the prison disciplinary context--was affirmed in Sandin, the Court reshaped the relevant inquiry.[2] Before Sandin, courts, focusing on the content of state prison codes, asked "whether the State had gone beyond mere procedural guidelines and had used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specific substantive predicates." ' Id. at 480 (quoting Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)); see also Toussaint v. McCarthy, 801 F.2d 1080, 1094 (9th Cir.1986) ("Before we will recognize a constitutionally protected liberty interest, state law must direct that a given action will be taken or avoided only on the existence or nonexistence of specified substantive predicates."). The Sandin majority abandoned what it feared had become a single-minded focus on mandatory directives in prison regulations in favor of a threshold examination of the "nature" of the alleged state-created liberty interest. See Sandin, 515 U.S. at 480-81; Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir.1996) ("The [Sandin ] Court in its new approach seeks to prevent turning every rule or regulation that establishes a procedure or requires the provision of an amenity into a right that implicates a liberty interest."). After Sandin, only those restraints, whether regulated by mandatory language in prison codes or not, that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are subject to due process review. Sandin, 515 U.S. at 484.[3]
 
 
 8
 Before Sandin, it was well established in this circuit that prisoners in California have a state-created liberty interest in not being removed from the general prison population and placed in administrative segregation. See Cato v. Rushen, 824 F.2d 703, 704 (9th Cir.1987); Toussaint, 801 F.2d at 1098. Sandin, however, marks a potentially significant departure from pre-Sandin due process jurisprudence in the prison disciplinary context. In May v. Baldwin, 109 F.3d 557 (9th Cir.1997), we interpreted the application of Sandin to the claim of a prisoner who had been placed in administrative segregation pending a disciplinary hearing and held that such administrative confinement "falls within the terms of confinement ordinarily contemplated by a sentence." Id. In the case before us, the segregated confinement is indefinite and the petitioner has been confined in the SHU for over 11 years. We remand to the district court for a determination in the first instance of whether this indefinite confinement constitutes "atypical and significant hardship" constituting a protected liberty interest and, if so, whether the process given to be released from the SHU meets the requirements of the Fourth Amendment.
 
 
 9
 II. Indefinite Confinement in the SHU and the Eighth Amendment
 
 
 10
 Pifer contends that his indefinite confinement in the SHU is cruel and unusual punishment in violation of the Eighth Amendment. We remand Pifer's Eighth Amendment claim for reconsideration in light of Madrid v. Gomez, 889 F.Supp. 1146 (N.D.Cal.1995), issued after the magistrate in this case completed the findings and recommendations on which the district court relied. While Madrid did not specifically consider petitioner's Eighth Amendment challenge, the Madrid class action addressed in detail the factual and legal issues raised in Pifer's Eighth Amendment claim,[4] and its effect on the analysis of the record in this case should be determined in the first instance by the district court.
 
 III. Debriefing and the Fifth Amendment
 
 11
 Pifer argues that requiring him to implicate himself and others in criminal activity as part of the debriefing process violates his right against self-incrimination. The state does not contend that Pifer will not be required to divulge information regarding criminal activity, but argues that (1) the Fifth Amendment does not apply to the debriefing process, and (2) even if it does apply, Pifer's rights have not been violated.
 
 
 12
 The standard for evaluating whether an individual has a legitimate Fifth Amendment claim is well established. The Fifth Amendment " 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." ' United States v. Bodwell, 66 F.3d 1000, 1001 (9th Cir.1995) (quoting Kastigar v. United States, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)); see also NLRB v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 617 (9th Cir.1973) (noting that Fifth Amendment does not apply "if, under the circumstances, the witness may not reasonably apprehend that the disclosures he is called upon to make could be used against him in a criminal prosecution or could lead to other evidence that might be so used"). Because Pifer does not satisfy this standard, we reject his Fifth Amendment claim.
 
 
 13
 Pifer does not have a reasonable belief that disclosures made during debriefing could be used against him in a criminal proceeding .[5] It is uncontroverted in the record that "[a]n inmate who debriefs need not necessarily provide information about his criminal activities, if any. It is sufficient for purposes of testing his sincerity if he provides information about the identities and criminal activities of other inmates affiliated with the prison gang ." Moreover, nothing in the record indicates that information gained from debriefing has ever been used in any criminal proceeding. Cf. Baxter, 425 U.S. at 317 ("The state has not ... sought to make evidentiary use of his silence at the disciplinary hearing in any criminal proceeding."). Rather, the information is used to verify an inmate's abandonment of a prison gang. In sum, while indefinite SHU confinement undoubtedly places immense pressure on gang-validated inmates to debrief, nothing in the record establishes that Pifer has a reasonable belief that the information gained during debriefing could be used against him in a future criminal proceeding. We therefore affirm the district court's holding with respect to this issue.
 
 IV. Pifer's Other Claims
 
 14
 On remand, the district court, in the course of integrating Sandin and Madrid into its decision, may, but is not required to, review again its determinations with respect to the other issues raised by Pifer. When the district court's review is complete, it should include all of its determinations in a final appealable order.
 
 
 15
 AFFIRMED IN PART AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Court cited two examples of restraints that trigger the application of the Due Process Clause: involuntary transfer from a correctional facility to a state mental hospital and the involuntary administration of psychotropic drugs. See Sandin, 515 U.S. at 479 n. 4 (citing Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (mental hospital), and Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (psychotropic drugs))
 
 
 [2]
 Further interpretation and application of Sandin in the federal courts may be required before it becomes clear whether "the jurisprudential landscape was leveled" by Sandin, Roucchio v. Coughlin, 923 F.Supp. 360, 371 (E.D.N.Y.1996), or whether Sandin more modestly "refocused the test for determining a liberty interest," Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir.1996)
 
 
 [3]
 In making the "atypical and significant hardship" determination, the Sandin majority relied on three factors. First, the Court noted that the conditions of disciplinary segregation in Hawaii's prison system "mirrored those conditions imposed upon inmates" in analogous discretionary confinement settings, namely administrative segregation and protective custody. Sandin, 515 U.S. at 486. Second, the Sandin majority cited the relatively short, 30-day disciplinary sentence received by inmate Connor in support of the proposition that the disciplinary term "did not work a major disruption in his environment." Id. Finally, the Court emphasized that Connor's disciplinary confinement did not "inevitably affect the duration of his sentence," because "[n]othing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or grant parole in its absence, even though misconduct by regulation is a relevant consideration." Id. at 487 (internal citations omitted)
 
 
 [4]
 Pifer was a member of the Madrid class, which included "all prisoners who are, or will be, incarcerated by the State of California Department of Corrections at Pelican Bay State Prison." Madrid, 889 F.Supp. at 1155
 
 
 [5]
 The state argues that two cases, Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), and Taylor v. Best, 746 F.2d 220 (4th Cir.1984), dispose of Pifer's Fifth Amendment claim. We agree with petitioner that both are distinguishable. While each indicates that the Fifth Amendment has a relatively limited reach when inmates are questioned for prison administrative purposes, neither controls whether Pifer has a reasonable belief that information gained during debriefing will be used in a future criminal proceeding